## Commonwealth v. Zammarelli

*J. B. Adams*, district attorney, for Commonwealth.
*Nicholas Comfort*, for defendant.

MORROW, J., November 7, 1931.—Fornication and bastardy were the offenses charged in the indictment. The defendant was found guilty as indicted. Edith Wyland, an unmarried girl, seventeen years of age, gave birth to a male child at Bessemer, Fayette County, Pa., on December 19, 1930. She testified that the defendant had sexual intercourse with her at various times between February and September, 1930, and that he is the father of her child. The defendant denied this testimony and insists that he is not the father of the child.

Not to disprove fornication, but in defense as to the bastardy charge, Dr. H. A. Heise, pathologist at the Uniontown Hospital, was called as an expert witness. He testified that there are four types of human blood, designated as A, B, AB and O. This is the classification originated by Dr. Karl Landsteiner, now of the Rockefeller Institute. Dr. Heise has had much experience in typing blood. He says it is a very simple procedure, and is chiefly done prior to blood transfusion in order to find a person who can give blood to another, it being advisable to have the same type in all cases. It is estimated that forty-seven per cent. of our people have type O blood, forty-three per cent. type A, seven per cent. type B, and three per cent. type AB. Parentage of a child, he testified, cannot be determined by a blood test, or blood grouping, but non-paternity in certain instances can be established. The Commonwealth introduced into the record in the cross-examination of Dr. Heise corroboration of this proposition, reading from the American Medical Journal, volume 93, 1929, page 612, the following: "Determination of nonpaternity. As yet it is wholly impossible to establish paternity by means of blood grouping, and this method can be used only in establishing nonpaternity, and that only in certain instances. Hooker and Boyd have recently discussed the problem on the basis of mathematical probability, which for clinical purposes is sufficiently close to actual observations to be considered identical. Proof of nonpaternity by this means depends on showing that, according to the laws of inheritance of

determining factors, the child could not be the descendant of both the woman and the man in question. And hence, since it is assumed to be the child of the woman, it is consequently proved to be the child of a man other than the accused. The chances for a man wrongfully implicated of proving his innocence are about one in seven, or there are six chances to one that he will be unable to do so. If, however, the blood group of the man is known, it is possible to tell with greater accuracy what his chances may be of proving non-paternity, since the various percentages in each blood group are approximately known."

According to the testimony of Dr. Heise, there are definite laws which govern the transmission of the types of the parents to the offspring. For instance, a child cannot have the characteristic of A or B if it is not present in at least one of the parents. If the father's blood is type O and the mother's A, the child's blood type will be either O or A, but if one of the parents has type A blood and the other type B, the child's blood may be any one of the four types.

Dr. Heise testified that on April 26, 1931, he tested or typed the blood of the mother, Edith Wyland, the blood of her child, and the blood of the defendant. He says that he did this very carefully, and repeated each test, and that the tests showed the mother to have type A blood, the defendant type O blood and the child type B blood. It was his conclusion that the defendant could not be the father of the child.

The reason urged for a new trial was that the verdict is against the evidence. As the record stands, there is no testimony that the typing was not accurately done. No scientific opinion was offered in contradiction of the testimony of Dr. Heise, and therefrom his conclusion appears to be a matter of certainty. An authority not mentioned at the trial or argument is in line with the testimony of Dr. Heise. We refer to "Biologic Tests for Medicolegal Purposes," by Ludvig Hektoen, M.D., New England Journal of Medicine, volume 199, No. 3, pages 120-126, July 19, 1928. The following is quoted therefrom:

"Blood Grouping and Parentage. An agglutinogen does not appear in a child unless present in at least one of the parents. As they are inherited as dominant, independent, permanent characters, the agglutinogens can serve as the basis for tests that may be of value in studying problems of parentage.

"Three statements will summarize adequately the fundamental relationships between the blood groups of parents and children:

"1. The appearance of an agglutinogen in a child means that it must be present in at least one of the parents.

"2. Since persons of groups A and B may carry an unapparent but heritable factor which determines the absence of agglutinogen, the recessive O (or R) of the literature, a child of group O may be born of any combination of groups O, A and B (possibly also AB).

"3. It is agreed generally, though it is still debated, that a child of group O cannot have a parent in group AB, and, vice versa, a child of group AB cannot have a parent in group O.

"Statistical treatment of mass data and the results of studies of individual families support these statements, and occasional apparent exceptions are due either to error in technic or erroneous information as to parents.

"Without knowledge of the group of the second parent, the claim of one person to be a parent may be justifiable so far as blood grouping goes, except, possibly, if claimant's group is O and the child's AB, or, vice versa, the claimant's group is AB and the child's O.

"Refutation of parentage, on the ground of genetic incompatibility of the blood groups in question, is the main definite result of the application of blood

grouping to problems of parentage. For the rest, only possibilities can be indicated. Even when the mother and child and a supposed father belong to a single group, notably A or B, individual identifications cannot be established because so far as blood grouping goes other members of the same groups would have equal standing.

"Two women claimed the same boy as son. With one of the women was a man alleged to be the father of the boy. In such a case, eleven possible combinations of blood groups for the man, the woman and the child would refute the claim of the man and the woman to parentage of the boy.

"*Combination of blood groups defeating claim to parentage*

| "Boy | Parents | Boy | Parents | Boy | Parents |
|------|---------|-----|---------|-----|---------|
| "A   | O and O | B   | O and O | AB  | O and O |
|      | O and B |     | O and A |     | O and A |
|      | B and B |     | A and A |     | O and B |
|      |         |     |         |     | A and A |
|      |         |     |         |     | B and B" |

As we view the matter, a new trial should be granted. The Commonwealth may check the typing of blood if desired. Dr. Heise testified that he had the mother and the defendant both sign an agreement that they would submit to having this done in some other laboratory. And if there is not general agreement among those familiar with blood testing and the hereditary factors involved, this may be shown at another trial.

### Order

And now, November 7, 1931, after consideration and for the reasons stated in the foregoing opinion, a new trial is granted in this case.

From Luke H. Frasher, Uniontown, Pa.