## Commonwealth v. Smith

Before Graff, P. J., and Nelson, P. J. (sitting specially), and Kennedy, J.

*James F. Malone, Jr.*, district attorney, and *Robert N. McGee, Jr.*, assistant district attorney, for Commonwealth.

*Albert Martin*, for defendant.

KENNEDY, J., February 15, 1955.—Defendant is charged in the indictment with having possession of and dealing in a narcotic drug, to wit, heroin on August 10, 1953. In a trial without jury he was found guilty. By counsel he has filed motions to arrest judgment, or to grant a new trial, and it is the disposition of these motions that is now before us. The charges were lodged against defendant by the police of Pittsburgh on information that came to them from one Clarence Phillips, an admitted narcotic addict, who did *not* furnish them with any sample of any substance allegedly containing heroin. When arrested no heroin nor any other types of narcotic drugs were found in defendant's possession or under his control. No admission or confession was made by him, but, on the contrary he has denied the charges since his arrest. The informer, Phillips, testified he bought a "spoon" of a substance containing heroin from defendant in June 1953 at a gasoline station. It is admitted that in the underworld the heroin that is sold to addicts is in powder form, and is "cut" and its potency and purity reduced by mixing it with milk-sugar or quinine. It is deduced from the testimony that a "spoon" contains about 40 grains. This witness, Phillips, explained that he would fill about 20 no. 5 capsules (each holding two grains) with this powder which he purchased. Then he would put the contents of four capsules in a

teaspoon, dilute with water, heat this spoon with lighted matches till the powder had dissolved, then pour the liquid into a hypodermic syringe, and inject it into a vein in his arm. He further testified that he could distinguish heroin, morphine and cocaine by taste, but also that after being an addict for 16 years he definitely could tell when heroin was in his blood stream by the effects and reaction on his mental and neural system. (He and another witness addict described in detail the different reactions an addict experiences in the use of heroin, morphine and cocaine; how long they respectively last, that it requires one and a half to two grains of heroin in the solution injected into the veins to give the sought-for reaction, etc.). It is the contention of defendant's counsel that this testimony standing alone as it does in this proceeding, does not make out a prima facie case in that such testimony is insufficient, does not meet the statutory requirements and is only conjectural. Section 2 of Pennsylvania Narcotics Act of July 11, 1917, P. L. 758, 35 PS §852, as amended, provides:

"The word 'drug' shall not be construed to include— (1) preparations and remedies and compounds which do not contain more than two grains of opium, or more than one-fourth of a grain of morphine, *or more than one-eighth of a grain of heroin*, or more than one grain of codeine, or any salt or derivative of any of them, in one fluid ounce, if the same is liquid; or, if a solid or semi-solid, in one avoirdupois ounce; (2) . . .".

It is argued therefore that testimony from a chemist is required to prove that the substance sold as heroin contained more than one-eighth grain of heroin per one avoirdupois ounce by qualitative and quantitative analysis of it before a prima facie case is made out. We have grave doubts if section 2 applies in a case of this character, since it refers to "preparations, remedies and compounds" and because of the further

limitations set forth in the section and in section 4 and section 13 of the same act. Section 13:

"In any prosecution under this act it shall not be necessary to negative any of the exemptions of this act in any complaint, information, or indictment. The burden of proving any exemption under this act shall be upon the defendant."

No reported case in Pennsylvania has held that such proof from a chemist is an essential of the Commonwealth's case in a narcotic indictment. The Pennsylvania Narcotic Act is almost verbatim the same as the Federal Narcotic Act. In the case of Pennacchio v. United States, 263 Fed. 66 (cert. denied, 253 U. S. 497) syl. 1 reads:

"On trial of defendant for illegal sale of opium, testimony of the purchaser that the substance bought was opium held *competent*, although he was not a chemist, where he testified that he was a habitual user of opium, knew its taste, and that he used that purchased."

The opinion cites other authorities where convictions were upheld although there was no concrete corpus delicti available, viz., taste or reaction from drinking distilled or fermented liquors, odor of carbolic acid or chloroform.

There are 438 grains in an ounce. As heretofore stated the addict testified that at least one and a half grains of heroin is needed in a dosage to give the reaction experienced by him. It is inconceivable that the substance he said he purchased contained less than one-eighth grain in ratio to one avoirdupois ounce, since he got the desired effect by the use of four grains.

It is our conclusion that the Commonwealth made out a prima facie case on the proofs it submitted, and therefore the motion to arrest judgment will be denied. If the Commonwealth's case rested solely on the addict's testimony that he could tell heroin by its

appearance and taste our conclusion would be contra. Commonwealth witness, John Leib, crime laboratory chemist, testified that both heroin and morphine are bitter to the taste, and cannot be differentiated by taste, touch or appearance. He further stated that heroin in volume is six times more toxic than morphine.

The motion for new trial brings up for consideration the weight to be given to addict Phillips' testimony in the light of the testimony offered by defendant, Herschel Smith, and is a matter of serious moment. This defendant took the stand and again denied he sold Phillips heroin in June 1953, or anytime. The indictment charges him with making the sale on August 10, 1953. Presumably that is the date Phillips gave the police. Defendant further testified he is age 44, married, and has always been engaged in some legitimate business or employment. We have the right to assume he has never had any criminal record involving moral turpitude, otherwise it would have been brought out at the trial. He further said he only knew Phillips to see him except that a few months before his arrest he had an argument with Phillips because he would not use his jitney auto to pick up a TV set when asked to do so by Phillips. He stated his reason for refusing was that Phillips had a reputation for being a burglar, receiver of stolen goods and a drug addict. This reputation was correct because Phillips admitted at trial his criminal record went back to 1938 and he had been convicted of a number of felonies in this and in other States, and that he was in jail awaiting trial on another charge when he testified. We do not agree with defense counsel that an addict testifying for the Commonwealth in an indictment charging a defendant with selling narcotics is an accomplice as conventionally understood in the criminal law. We do agree, however, that, considering all the testimony, justice requires a new trial be granted to defendant.