## Commonwealth *v.* Coyle, Appellant.

510.

Argued April 16, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Thomas H. Cauley*, with him *Cauley and Birsic*, for appellant.

*William Claney Smith*, Assistant District Attorney, with him *Edward C. Boyle*, District Attorney, for appellee.

OPINION BY WOODSIDE, J., September 16, 1959:

This appeal involves the weight to be given to evidence of a blood grouping test which showed that the defendant in a bastardy case could not have been the father of the prosecutrix's child. The jury, apparently ignoring the evidence of the blood test, convicted the defendant, and the court below refused a new trial. After sentence was imposed upon the defendant, he appealed to this Court.

Prior to the Act of June 15, 1951, P. L. 585, 19 PS §871, Pennsylvania courts granted new trials in cases where the Commonwealth's evidence was insufficient to sustain the conviction, *and* where the verdict was against the weight of all the evidence. *Commonwealth v. Nathan*, 93 Pa. Superior Ct. 193, 197 (1928). Since

the passage of this act the courts may arrest the judgment of sentence on the ground of the insufficiency of the evidence, but the sufficiency must be tested according to the Commonwealth's evidence. *Commonwealth v. Wright*, 383 Pa. 532, 536, 119 A. 2d 492 (1956) ; *Commonwealth v. Brown*, 184 Pa. Superior Ct. 494, 498, 136 A. 2d 138 (1957).

The court may not arrest judgment where there is evidence to sustain the conviction, but it may grant a new trial where the verdict is against the weight of the evidence. 11 P.L.E. Criminal Law, §609; *Commonwealth v. Jenkins,* 185 Pa. Superior Ct. 577, 138 A. 2d 203 (1958) ; *Hess v. Stiner,* 144 Pa. Superior Ct. 249, 250, 19 A. 2d 560 (1941) ; *Commonwealth v. Jones,* 303 Pa. 551, 154 A. 480 (1931) ; *Commonwealth v. Smith,* 3 Pa. D. & C. 2d 228 (1955).

In the case now before us, Dr. William Kuhns, a noted pathologist of Pittsburgh testified that he made two separate tests of the blood of the mother, the child and the defendant, that the defendant was in blood group "O", the mother was in blood group "A", and the child was in blood group "B", and that this excluded the defendant as a possible father of the child. It is acknowledged by medical and legal authorities alike that under these blood groupings it would be biologically impossible for the defendant to be the father of the child. See I Wigmore on Evidence, 3rd Edition, page 619, table 4, line 2, §165b.

The integrity and professional ability of the medical witness was not questioned, nor is there anything in the evidence to indicate any possibility of error in the laboratory testing.

The courts, which are responsible for administering justice, should not permit a jury to capriciously disregard indisputable evidence, and to convict a defendant when such result would be clearly against the weight

of the evidence. As stated in *Commonwealth v. Corrie*, 302 Pa. 431, 437, 153 A. 743 (1931) and repeated in *Commonwealth v. Balles*, 160 Pa. Superior Ct. 148, 150, 50 A. 2d 729 (1947) "Law must be the servant of justice, and courts of justice will not be blind to any breach of basic rights or impotent to vindicate them."

Whether a new trial is to be granted because the verdict is against the weight of the evidence is generally a matter for the trial court. *Commonwealth v. Attarian*, 129 Pa. Superior Ct. 31, 34, 194 A. 776 (1937). One of the reasons for this rule is that the trial judge has an opportunity to form first hand impressions of the credibility of the witnesses, and most cases tried before juries turn upon credibility. Cases such as this, however, turn upon the weight to be given to the results of blood tests, a scientific matter which a trial judge is in no better position to consider than an appellate judge. The trial judge has superior position to pass upon the integrity and ability of the medical experts who make the blood tests, but the weight to be given to the biological conclusions drawn from these tests is a matter which a trial court judge and an appellate judge are equally able to pass upon.

Blood tests are used as an aid to determine paternity in an ever-increasing number of jurisdictions. Pennsylvania should be proud that the first of the many thousands of reported cases in America on this subject (according to 163 A.L.R. 940) is *Commonwealth v. Zammarelli*, 17 Pa. D. & C. 229 (1931), in which the late Judge MORROW, of Fayette County, granted the defendant a new trial in a bastardy case because the uncontradicted evidence of a medical expert called by the defendant was that blood tests showed the defendant could not have been the father of the child. See also *Commonwealth ex rel. v. Visocki*, 23 Pa. D. & C. 103 (Allegheny County 1935).

Following two decisions of this Court that a prosecutrix could not be required to submit to a blood test in the absence of legislation requiring her to do so,[1] the Act of May 24, 1951, P. L. 402, 28 PS §306, was enacted.

It provides: "In any proceeding to establish paternity, the court, on motion of the defendant, shall order the mother, her child and the defendant to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion of the defendant is established."

Other states have similar statutes which provide only that the results of the blood tests *may be received* in evidence. The courts of some of these states have said that the tests are *conclusive* where the accuracy of the testing procedure is shown, or not questioned. *Jordan v. Mace,* 144 Me. 351, 69 A. 2d 670 (1949); *Commissioner of Welfare ex rel. Tyler v. Costonie,* 277 App. Div. 90, 97 N.Y.S. 2d 804 (1950); *Clark v. Rysedorph,* 281 App. Div. 121, 118 N.Y.S. 2d 103 (1952).

In Pennsylvania we have not gone that far. In *Commonwealth v. Wright,* 178 Pa. Superior Ct. 181, 113 A. 2d 724 (1955), a bastardy case in which the blood grouping test excluded the defendant as the father, this Court, with six judges sitting, was equally divided between affirming the new trial granted by the court below, and reversing the court below for refusing the motion in arrest of judgment. After allowing an allocatur, the Supreme Court quashed the appeal upon the ground that it was taken prior to sentence. In its

---

[1] *Commonwealth v. English,* 123 Pa. Superior Ct. 161, 169, 186 A. 298 (1936) and *Commonwealth v. Krutsick,* 151 Pa. Superior Ct. 164, 30 A. 2d 325 (1943).

opinion, however, the Supreme Court noted that "the sufficiency of the evidence must be tested according to the Commonwealth's evidence. This amply sustained the charge and the court was without power to discharge the defendant." *Commonwealth v. Wright*, 383 Pa. 532, 536, 119 A. 2d 492 (1956).

In *Commonwealth v. Hunscik*, 182 Pa. Superior Ct. 639, 128 A. 2d 169 (1956), where a blood grouping test excluded the defendant, we granted a new trial (with one judge favoring the arrest of judgment). In *Commonwealth v. Davis*, 183 Pa. Superior Ct. 257, 130 A. 2d 217 (1957), we reversed the court below and granted a new trial in a bastardy case where the defendant was advised after trial that an error was made in evaluating the blood test and that instead of showing that he could be the father, it actually excluded him as the father.

There is no need to trace in detail the rapidly growing acceptance of blood grouping tests in American jurisdictions which followed the opinion by the pioneering Pennsylvania jurist in *Commonwealth v. Zammarelli*, supra, 17 Pa. D. & C. 229 (1931).[2] The courts of a number of states permitted, without statutory authority, the use of blood tests and even required parties to submit to the tests. *Commonwealth v. Stappen*, 143 N.E. 2d 221 (Mass. 1957) ; *State v. Eli*, 62 N.W. 2d 469 (N.D. 1954) ; *Parsons v. Parsons*, 197 Or. 420, 253 P. 2d 914 (1953) ; *State ex rel. Wollock v. Brigham*, 72 S. D. 278, 33 N.W. 2d 285 (1948) ; *State ex rel. Van Camp v. Welling*, 3 Ohio Supp. 333 (1936) ; *State v. Damm*, 64 S. D. 309, 266 N.W. 667 (1936) affirming on rehearing 252 N.W. 7 (1933).

---

[2] European Courts have been using blood tests since 1924. The institution of forensic medicine of Copenhagen and Danish Medico Legal Council have submitted to the Danish Courts written advice that the blood test exclusions are entirely reliable and should be accorded decisive effect. Legal Medicine by Gradwohl, page 575.

As related heretofore, the courts of some other states, when authorized by statute to "receive" such tests in evidence, have held the tests to be conclusive.

The National Conference of Commissioners on Uniform State Laws prepared a uniform act making *conclusive* the evidence of blood grouping tests where paternity is in issue. This uniform act has been adopted in California, New Hampshire, Oregon, and with modification, in Illinois.

The conference is composed of some of the greatest lawyers, judges, and teachers of law in the country and has developed a reputation for its exhaustive research, thorough consideration, and penetrating debates. Therefore, its report on the Uniform Act on Blood Tests to Determine Paternity is worth examining. The report contains the following: "In paternity proceedings, divorce actions and other types of cases in which the legitimacy of a child is in issue, the modern developments of science have made it possible to determine with certainty in a large number of cases that one charged with being the father of a child could not be. Scientific methods may determine that one is not the father of the child by the analysis of blood samples taken from the mother, the child, and the alleged father in many cases, but it cannot be shown that a man is the father of the child. If the negative fact is established it is evident that there is a great miscarriage of justice to permit juries to hold on the basis of oral testimony, passion or sympathy, that the person charged is the father and is responsible for the support of the child and other incidents of paternity. . . .

". . . The conclusion should be final if there is no dispute among the experts. There is no need for a dispute among the experts, and *true experts will not disagree. Every test will show the same results.* . . .

". . . Consequently, this is one of the few classes of cases in which judgment of court may be absolutely

right by use of science. In this kind of a situation it seems intolerable for a court to permit an opposite result to be reached when the judgment may scientifically be one of complete accuracy. For a court to permit the establishment of paternity in cases where it is scientifically impossible to arrive at that result would seem to be a great travesty on justice. In the scientific area there are relatively few situations where the results may be made absolutely conclusive. In many cases where medical expert testimony is used the testimony is really based on expert opinion only, but in the blood test to determine non-paternity by classification into groups, while the opinion of a doctor may be involved, it is the kind of an opinion on which experts will not differ . . ." 9 Uniform Laws Annotated pp. 102, 103.

Even before Pennsylvania adopted its statute on blood grouping tests, Judge, now United States Supreme Court Justice, BRENNAN said in *Cortese v. Cortese*, 10 N.J. Superior Ct. 152, 76 A. 2d 717, 719, 720 (1950) : "The value of blood tests as a wholesome aid in the quest for truth in the administration of justice in these matters cannot be gainsaid in this day. Their reliability as an indicator of the truth has been fully established. The substantial weight of medical and legal authority attests their accuracy, not to prove paternity, and not always to disprove it, but 'they can disprove it conclusively in a great many cases provided they are administered by specially qualified experts,' . . ."

"It is plain we should hold, as we do, that this unanimity of respected authorities justifies our taking judicial notice of the general recognition of the accuracy and value of the tests when properly performed by persons skilled in giving them."

In *Ross v. Marx*, 21 N. J. Superior Ct. 95, 90 A. 2d 545, 546 (1952), Judge SPEAKMAN said: "It is univer-

sally accepted in medical and scientific fields that the result of a blood grouping test disproving paternity . . . is not an expression of opinion upon which experts can differ but, rather, is the statement of a scientifically established fact. . . . As such it should be accepted by the courts of law. For a court to declare that these tests are not conclusive would be as unrealistic as it would be for a court to declare that the world is flat. This a court of law, whose prime function is to ascertain truth and administer justice, should not do."

In *Commonwealth v. Stappen,* supra, 143 N.E. 2d 221, 223 (Mass. 1957) the court said, "There is substantial authority to support the scientific reliability of blood grouping tests to prove biologically the impossibility of paternity."

The trial courts of this Commonwealth have differed on the action they should take when a jury ignores the result of blood grouping tests and convicts the defendant. Some have granted new trials; others have not.[3] Where there is no material difference in the evidence, the administration of justice should not vary thus from county to county.

It is our opinion that the jury capriciously disregarded the undisputed evidence of the blood grouping tests in this case, and that the verdict is clearly against

---

[3] Among the trial courts *granting* new trials in paternity cases where the verdict is contrary to that indicated by undisputed evidence of blood grouping tests are the following: Fayette County (*Commonwealth v. Zammarelli,* supra); Allegheny County (*Commonwealth ex rel. v. Visocki,* supra); Delaware County (*Commonwealth v. Wright,* supra) and Cambria County (*Commonwealth v. Nathanic,* unreported).

Among the trial courts *refusing* new trials under similar circumstances are Allegheny County (this case), Washington County (*Commonwealth v. Gromo,* on which we are filing an opinion herewith); Westmoreland County (*Commonwealth v. Hunscik,* supra) and Berks County (*Commonwealth v. Davis,* supra).

the weight of the evidence. The court below, therefore, abused its discretion in failing to grant the defendant a new trial.

In bastardy cases, it is the duty of the district attorney and the trial court to protect the Commonwealth, the prosecutrix and the child from any injustice which would result from errors in performing or evaluating blood grouping tests or from perjury of any witnesses testifying concerning the tests. There may be times when the district attorney lacks opportunity to satisfy himself as to the accuracy of the defendant's blood test evidence prior to its presentation at the trial. If there is the slightest doubt concerning the accuracy of the tests he can require a recheck, possibly by a different pathologist at a different laboratory. But, if, as the medical and legal authorities seem to agree, there can be no difference among experts, and the tests are reliable and the exclusion biologically definite, justice demands that a conviction so completely contrary to undisputed scientific evidence should not be permitted to stand.

In *Commonwealth v. Zammarelli,* supra, 17 Pa. D. & C. 229, 231 (1931) Judge MORROW said, "As we view the matter, a new trial should be granted. The Commonwealth may check the typing of blood if desired. . . . And if there is not general agreement among those familiar with blood testing and the hereditary factors involved, this may be shown at another trial."

This was a just solution in that case, and is a just solution to the problems before us in this case. It is a solution which hereafter might well be followed by the trial courts in cases where the facts are substantially the same as here.

Judgment of sentence is reversed and a new trial granted.

OPINION BY ERVIN, J., CONCURRING IN PART AND DISSENTING IN PART:

The modern developments of science have made it possible to determine with certainty that the defendant in this case could not be the father of prosecutrix's child. The integrity and professional ability of the medical witness were not questioned nor is there anything in the evidence to indicate any possibility of error in the laboratory testing. Why, therefore, should further time and money be wasted on a new trial? Some of the courts of our State are years behind in the trial of their cases and the granting of new trials in matters of this kind can but add to the delay. I would, therefore, reverse and discharge the defendant.