## Commonwealth v. Mauthe

*W. F. Clark*, Assistant District Attorney, for Commonwealth.

*J. D. Dunn*, and *R. Devlin*, for defendant.

SATTERTHWAITE, J., June 3, 1960.—The sole issue in this case is whether or not defendant legally can be guilty of *tending* to corrupt the morals of a child when the evidence at his trial was insufficient to go to the jury on the charge of *actually corrupting* the morals of that child. The problem arises on defendant's motion in arrest of judgment. The accompanying motion for

a new trial was expressly abandoned at argument, and no other questions have been presented.

Present purposes do not require a recitation of the factual background of the case in any great detail. Suffice it to say that defendant was initially charged with solicitation and assault with intent to commit sodomy, simple assault and battery, corrupting and tending to corrupt the morals of a child, and contributing to the delinquency of a child. From the Commonwealth's evidence, the jury could have found that defendant, having picked up a 16-year-old boy, Thor Thomas, as a hitchhiker at Willow Grove, Montgomery County, late at night, drove to a remote location in Bucks County, parked the car, placed his hand on Thomas' private parts and invited Thomas to do the same to him. Instead, however, the boy drew a knife and under threat thereof compelled defendant to drive some distance back into Montgomery County and ultimately forced him out of the car, after which Thomas drove away in it.

Thomas was apprehended a few hours later and made a written confession to the police whereby he admitted that he and other teenage boys had formed themselves into a band of vigilantes who conspired to take rather aggressive steps, outside the law, to scare off suspected homosexuals in the Willow Grove area. Their plan was to permit one of their number to be picked up as a hitchhiker by a driver they suspected to be of such inclination. If and when any improper overtures were made by the driver, the rider, alone or with others of the group in a following car, would turn on him and rob or otherwise do him violence. In the course of relating this arrangement to the police, which he also freely admitted in his testimony at the instant trial of defendant, Thomas told of defendant's conduct as above outlined. When subsequently confronted with this statement, defendant

orally admitted Thomas' accusations, according to the officers, and the within charges were thereupon filed against him.

At the close of the Commonwealth's case, consisting of the testimony of Thomas and the police officers, the trial judge believed that the evidence did not justify the inference that there was any sufficient connotation of sodomy or that it had been shown that the jurisdiction of a juvenile court had attached to the Thomas boy. Accordingly, demurrers to the evidence as to the sodomy and contributing to delinquency counts of the indictment were sustained. Moreover, and to simplify the deliberations of the jury, the trial judge also removed from their consideration in similar fashion the potentially difficult problem of whether or not defendant's conduct actually did corrupt Thomas' morals. He did so on the basis that there was no sufficient evidence that such result had actually come about by reason of defendant's conduct, and further in the belief that the statutory purpose required only the relatively simpler determination of whether or not defendant's actions would have *tended* to corrupt the boy's morals.

The trial judge therefore overruled a demurrer to the latter count, and the trial proceeded on that charge as well as the one alleging assault and battery. Defendant offered evidence denying Thomas' accusations and repudiating the admissions which the police officer attributed to him. After instructions of which no complaint has been made, the jury acquitted defendant of assault and battery (apparently on the theory that the indecent touching was consented to or tacitly invited), but found him guilty of tending to corrupt Thomas' morals.

Defendant's present motion in arrest of judgment is founded on the premise that he could not have corrupted Thomas' morals, and that, therefore, no mat-

ter what might have been the consequence had a more innocent child been in Thomas' place, nevertheless, defendant cannot be guilty even of *tending* to corrupt the boy's morals under such circumstances. We cannot agree, factually or legally, with this position.

In the first place, it does not appear as a matter of demonstrative fact the defendant's conduct did not, or could not, corrupt Thomas' morals. Contrary to defendant's assumption, the trial judge did not so rule. All that was actually decided in sustaining this aspect of the demurrer was that the Commonwealth had not *proven* that defendant's activities in fact had produced that result. Such a decision is a far cry from a ruling that the child's morals already had previously been so corrupted as a matter of law that they could not have been further affected by defendant's solicitations.

Secondly, even if we assume, as apparently defendant does, that Thomas was so depraved and lacking in moral character that no one could further adversely affect him in that respect, nevertheless, defendant could still be guilty of violation of the penal statute under which this prosecution was brought.

The offense in question, added as section 532 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4532, by the Act of June 3, 1953, P. L. 277, is defined as follows:

"Whoever, being of the age of twenty-one years and upwards, by an act corrupts or *tends to corrupt* the morals of any child under the age of eighteen years, or who aids, abets, entices or encourages any such child in the commission of any crime, or who knowingly assists or encourages such child in violating his or her parole or any order of court, is guilty of a misdemeanor, . . ." (Italics supplied.)

We are not presently concerned with any problem of definition of the term "morals". The constitution-

ality of the statute in light of possible uncertainties of that concept is no longer open to question in the trial courts; its validity was sustained in Commonwealth v. Randall, 183 Pa. Superior Ct. 603. Moreover, defendant offers no opposition to the almost self-evident conclusion that the Commonwealth's version of defendant's conduct, if accepted as true (as it must be for present purposes: Commonwealth v. Moore, 398 Pa. 198, 202; Commonwealth v. Coyle, 190 Pa. Superior Ct. 509, 511), and had it been effective in inducing similar activity on the part of Thor Thomas, would undoubtedly be recognized as a departure from accepted moral standards within the meaning of the legislative enactment.

On the other hand, we have no quarrel with defendant's contention that the case must be considered in light of circumstances which have reference to a particular child or children. We agree that an accused may not be found guilty of this offense because of conduct which might be thought capable, as an abstract proposition, of corrupting some unascertained child under circumstances which might theoretically be possible.

Concurrence in defendant's position to this extent, however, does not justify our agreement with his further argument that before he can be convicted, he must be proven to have had, as of the time of the alleged offense, present potential or ability actually to effect a corruption of the subject minor. So to hold would to a large degree ignore and read out of the legislative language the words "or tends to corrupt," and would place unwarranted emphasis upon the actual consequences to the child, rather than upon the real statutory objective which we apprehend to be the prohibition of socially reprehensible activities by adults which either do have, or reasonably might be inclined to have, adverse effect upon the moral character of

children who either are, or fairly might have been, influenced thereby. The guilt or innocence of one charged under this section is not determined by ascertaining whether the child in fact is corrupted, or actually commits a crime, or really does violate his parole. To the contrary, the gravamen of the offense is the wrongful influence or inducement, and the party accused is equally within the interdiction of the statute whether such influence or inducement actually is carried into effect or merely leads toward that end.

The word "tend," according to Webster's New International Dictionary, second edition, unabridged, means "to move or direct one's course in a certain direction . . . To be directed or have a tendency, conscious or unconscious, to any end, object or purpose; to exert activity or influence in a particular direction; to serve as a means; conduce; as, such an act must *tend* to weaken confidence."

Such definitions do not connote or imply any need or requirement of capacity actually to attain the end in question. The thought of "tending" toward a particular consequence in this respect may be considered analogous to the concept of "attempts" in the criminal law. In this connection it is clear that one may be guilty of an attempt to commit a particular crime notwithstanding that by reason of unknown or unrealized extraneous conditions he could not in fact have completed the full crime itself even if not interrupted: Commonwealth v. Silverman, 8 Bucks 238, 243, and authorities therein cited.

The exact question here presented does not seem to have come before our appellate courts. We believe, however, that at least two decisions would point toward the same conclusion we have hereinabove reached. In Commonwealth v. Blauvelt, 186 Pa. Superior Ct. 65, which involved a prosecution under this same statute, the Superior Court held that even the

active solicitation of the adult's improper advances by the minor whose morals were in question would not constitute a defense to the adult on this charge, notwithstanding that it would be a complete bar to conviction of indecent assault. In other words, even though the child reasonably might be considered already dissolute by reason of his initiative in the immoral incident, the participation of the adult would still be within the statute. Similarly, it has been held that one may be guilty of the parallel offense of contributing to the delinquency of a child if he receives stolen goods from him, even though his relationship to the situation otherwise may be entirely independent of the act of larceny which in fact had previously rendered the child legally delinquent: Commonwealth v. Stroik, 175 Pa. Superior Ct. 10, 16.

### Order

And now, June 3, 1960, for the reasons stated in the foregoing opinion, defendant's motion for new trial and motion in arrest of judgment are hereby respectively denied and refused, and defendant is directed to appear for sentence on Friday, June 10, 1960, at 10 a. m., d. s. t.