# Commonwealth v. Wilkins

*Kenneth K. McCann,* assistant district attorney, for the Commonwealth.
*Charles F. Gilchrest,* for defendant.

STRANAHAN, *P.J.,* June 15, 1984—Defendant was tried by a jury on the charges of driving while under the influence of alcohol[1] and the summary offense of failing to drive the automobile at a safe speed[2] and was found guilty of both charges. Post-trial motions have been filed in which defendant seeks an arrest of judgment or a new trial. Defendant alleges that the verdicts were against the weight of the evidence, that the evidence was insufficient as a matter of law, and that the court erred in refusing to suppress the breathalyzer results.

In reviewing whether the evidence is sufficient to establish all the elements of the offense of which defendant has been convicted, the court must view the evidence in the light most favorable to the prosecution. Commonwealth v. Sero, 478 Pa. 440, 387 A.2d 63 (1978). The test for determining the sufficiency of the evidence is:

---

1. 75 Pa. C.S. §3731(a)(1)
2. 75 Pa. C.S. §3361

"Whether, accepting as true all of the evidence, be it direct or circumstantial, and all reasonable inferences arising therefrom upon which, if believed, the trier of facts could properly have based the verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." Commonwealth v. Malone, 444 Pa. 397, 398, 281 A.2d 866, 867 (1971).

Although it is true that a new trial may be granted on the basis that the verdict is against the weight of the evidence even where the evidence is legally sufficient to sustain a guilty verdict,[3] before a new trial will be awarded, it must appear from the record that the jury's verdict is so contrary to the evidence as to "shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail." Commonwealth v. Barnhart, 290 Pa. Super 182, 434 A.2d 191 (1981).

The verdict in the present case is not only based upon evidence sufficient to establish all the elements of the offenses of which defendant has been convicted, but it is also clearly not against the weight of the evidence.

The Commonwealth presented three witnesses in this case. The first witness, Betty Jean Warwick, was the driver of the automobile that was struck from behind by defendant's vehicle. Ms. Warwick testified that she was driving on the Shenango Valley Freeway near the Pennsylvania-Ohio border when she pulled into the passing lane in order to pass a truck and was struck from behind by another vehicle. The impact of the collision drove Ms. Warwick's automobile into the tractor-trailer she

---

3. Commonwealth v. Meadows, 471 Pa. 201, 369 A.2d 1266 (1977).

had been attempting to pass. Before entering the passing lane, Ms. Warwick looked in her rear-view mirrors for oncoming cars and saw none. At the time of the accident, it was getting dark and the weather was rainy.

The second witness for the Commonwealth was an eyewitness to the accident who testified that she saw Ms. Warwick put on her turn signal and make a proper entry into the passing lane. The witness also testified that she saw defendant's vehicle traveling without headlights at a "fast" rate of speed and collide into the Warwick vehicle.

The arresting police officer, Wayne Martin, testified that he arrived at the scene of the accident shortly after the collision and found defendant leaning against a guard rail. While speaking to defendant, the officer smelled alcohol and noticed that defendant's eyes were watery and glassy. The officer also observed that defendant's speech was slurred and that his clothes were disheveled. Field sobriety tests indicated that defendant was having trouble with his balance. After his arrest, defendant was asked to perform more sobriety tests which he also failed. A breathalyzer test administered with defendant's permission indicated a blood alcohol content of .17 percent.

Defendant produced two witnesses on his behalf. Defendant's father testified that his son did not appear intoxicated when he saw him an hour after his arrest. A co-worker testified that defendant was not intoxicated when he reported to work several hours after the arrest.

The jury apparently chose to give more credence to the observations of defendant by the police officer immediately after the accident than to those observations made by defendant's witnesses at a later time. Viewing this evidence in the light most favor-

able to the Commonwealth, it is clearly sufficient to sustain the verdict of guilty of driving under the influence.

Defendant argues that the evidence was insufficient to prove driving at an unsafe speed because the eyewitness' statement that she saw defendant traveling at a "fast" speed lacks any evidentiary value.

While it is true that terms such as "fast," "slow" or "excessive" have always been held to be too vague to be of an evidentiary value,[4] the term "fast" was not the sole evidence before the jury tending to prove driving at an unsafe speed. Ms. Warwick testified that she checked her rearview mirror and saw nothing approaching and yet was rear-ended immediately upon entering the passing lane. The Warwick vehicle was hit with such impact that it was driven into the tractor-trailer. The weather was rainy and dark and defendant was driving without headlights on. The eyewitness testified that she was going 30 m.p.h. when defendant passed her. The speed limit was 40 m.p.h.

The statute under which defendant was convicted, 75 Pa. C.S. §3361, states:

"No person shall drive a vehicle at a speed greater than is reasonable and prudent *under the conditions* and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." (Emphasis added.)

It was reasonable for the jury to infer from the force of the impact, the rainy and dark conditions, and from the testimony of the witnesses that de-

---

4. Starner v. Wirth, 440 Pa. 177, 269 A.2d 674 (1977); Layman v. Gearhart, 389 Pa. 187, 132 A.2d 228 (1957).

fendant was not traveling at a reasonable and prudent speed on the evening of the accident. The evidence was clearly sufficient to establish the elements of the crime charged.

Defendant next argues that the court erred in refusing to suppress the results of the breathalyzer test because of the Commonwealth's pre-trial destruction of the test ampoule. It is submitted by defendant that the Commonwealth's destruction of the test ampoule after the administration of the chemical test denied defendant his constitutional rights of confrontation of the witnesses and evidence against him as well as his right to the discovery of evidence which is material and favorable to him to the issue of his guilt. Defendant alleges that had the ampoule been preserved, an expert witness would have been able to determine whether the proper chemicals were in the proper solution in the test ampoule for a valid and reliable breathalyzer test to result and whether the ampoule contained the quantity of alcohol necessary to give the reading obtained on the evening of the accident.

Having previously discussed and ruled on this issue in detail in the opinion on the suppression hearing for this case, we will now only briefly summarize the reasons why the destruction of the test ampoule does not require suppression of the breathalyzer test results.[5]

While there is a scarcity of Pennsylvania law on point, it appears that most jurisdictions have con-

---

5. Since the time this opinion was written, the United States Supreme Court announced its decision in California v. Trombetta, 52 U.S.L.W. 4744 (1984), in which the court, using reasoning similar to our reasoning here, held that the failure to preserve breath samples did not constitute a violation of the Constitution.

cluded that there is no denial of due process and that breathalyzer test results need not be suppressed when a test ampoule is routinely destroyed. Commonwealth v. Lucarini, 8 D.&C. 3d 679 (1977) pointed out that while due process requires proof that the breathalyzer test was properly conducted, the quality controls employed in the preparation of the ampoules present a strong incidence of reliability. The court concluded that the question was whether any scientific evidence can be adduced from the re-examination of the test ampoule which would be of any assistance to defendant.

Defendant here merely alleges that the ampoules could somehow be re-examined for accuracy but does not present authority establishing that there is a scientific method of retesting the ampoule. Further, even if the ampoules could be successfully retested, defendant could only impeach the test results as recorded by the breathalyzer. Defendant is attacking the credibility or weight to be given to the test results and has done nothing towards establishing his innocence. Since the unavailable ampoules are neither material nor exculpatory, there is no constitutional violation as contemplated by the Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Defendant is not without means of attacking the credibility of the breathalyzer test. Specific procedures for testing the accuracy of the Breathalyzer 1000 are outlined in 67 Pa. Admin. Code 77.5 (Shepards 1983). Defendant may attack the credibility of the test by questioning whether all the procedures have been completed. Defendant can challenge the accuracy of the test by having a physician of his own choosing conduct an additional breath,

blood or urine test as provided in 75 Pa. C.S. §1547(h).

The final argument advanced by defendant is that the breathalyzer test results should have been suppressed at trial because the machine was tested for accuracy on only one point on its scale.

Defendant admits that the breathalyzer machine in question was properly tested for accuracy in accordance with 67 Pa. Admin. Code 77.5 (Shepards 1983) but argues that the mandated tests are inadequate. The breathalyzer machine was tested with a known .10 percent solution in the test ampoule. Defendant contends that the machine's accuracy should also have been tested at other points on the scale.

Defendant has presented no evidence establishing that the machine can be accurate at one point on the scale and inaccurate at other points. The fact that the mandated procedures in the Pennsylvania code require testing only at .10 percent would indicate to the contrary. But whether a more accurate test could be performed by testing the machine at several points on the scale rather than just one goes to the weight and credibility of the evidence, not the admissibility of the test results. Defendant was free to attack the credibility of the test results at trial on this basis and was in no way prejudiced by the court's failure to suppress evidence that it had been tested according to mandated procedures.

ORDER

And now, June 15, 1984, defendant's motion in arrest of judgment and motion for a new trial are denied.