543 A.2d 159

Blosenski Disposal Service, Appellant *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

316

Argued February 22, 1988, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*James A. Cunningham, Sager & Sager Associates,* for appellant.

*Kenneth A. Gelburd,* Special Deputy Attorney General, for appellee.

OPINION BY JUDGE DOYLE, May 24, 1988:

Before us is an appeal by Blosenski Disposal Service (Appellant) from an order of the Court of Common Pleas of Chester County, denying Appellant's post-trial motions for arrest of judgment and for a new trial. We affirm.

Viewed in the light most favorable to the Commonwealth, the facts as established by the record are as follows:[1]

---

[1] It is well established that:

[i]n passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.

*Commonwealth v. Meadows,* 471 Pa. 201, 205, 369 A.2d 1266, 1268 (1977) (quoting *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965)). (Emphasis in original.) (Citations omitted.) In order for a trial court to properly grant a criminal defendant's motion

On July 7, 1981, an agent of the Department of Environmental Resources (DER), Frank Holmes, inspected Appellant's transfer station located at the Chester Tree Road site in Chester County. Agent Holmes observed green trash bags being removed from a trash truck and then being compacted. Appellant's facility was only authorized to compact cardboard and on-site generated trash; therefore, agent Holmes issued two citations to Appellant for violations of 25 Pa. Code §75.21(a), which pertained to unlawful conduct under Sections 610(2) and 610(4) of the Solid Waste Management Act (Act).[2]

Appellant was found guilty of these violations by a District Justice and the same result was reached by the court of common pleas after a hearing *de novo.* Appellant then filed post-trial motions in arrest of judgment and for a new trial. During the pendency of post-trial motions in this case, the court administrator informed the trial judge of similar criminal matters pending against Appellant. Appellant thereupon moved that the judge recuse himself. This motion was denied. The trial court then denied Appellant's motions for arrest of judgment and new trial.

Appellant raises a raft of issues on this appeal which the court shall address *seriatim.* First, Appellant challenges the substantiality of the evidence to establish its unlawful violations of the Act. There were two charges made against Appellant. The first pertained to a violation of Section 610(2) of the Act which prohibits operating or utilizing a solid waste processing facility without

in arrest of judgment on the ground of insufficient evidence, it must be determined that in accepting all of the evidence and all the reasonable inferences therefrom, it would be nonetheless insufficient in law to find beyond a reasonable doubt that the defendant is guilty of the crime charged. *Meadows.*

[2] Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§6018.610(2), 6018.610(4).

a permit from DER. The second charge pertained to a violation of Section 610(4), prohibiting the use of land as a municipal solid waste processing area without a DER permit.[3]

Upon review of the evidence, we find it to be sufficient to support the trial court's finding of guilt. To begin, DER presented testimony that Appellant never had a permit from it for solid waste management at its Chester Tree Road site. DER agent Holmes then testified that on July 7, 1981, he observed a green truck bearing the words "Blosenski Disposal Service" being backed into the compactor building. He testified that he observed several green plastic trash bags, some cans, glass bottles and old pieces of wood in the rear portion of the trash truck. He also stated that he saw more of these trash bags in the compactor pile. Although this testimony is the only evidence of Appellant's operation, dumping or depositing of trash, we are not persuaded that this eye witness' testimony was so weak and inconclusive as to warrant an arrest of judgment.

---

[3] Section 610 of the Act provides in pertinent part:
It shall be unlawful for any person or municipality to:

. . . .

(2)   Construct, alter, operate or utilize a solid waste storage treatment, processing or disposal facility without a permit from the department as required by this act or in violation of the rules or regulations adopted under this act, or orders of the department, or in violation of any term or condition of any permit issued by the department.

. . . .

(4)   Store, collect, transport, process, treat or dispose of, or assist in the storage, collection, transportation, processing, treatment or disposal of solid waste contrary to the rules or regulations adopted under this act, or orders of the department or any term or any condition of any permit, or in any manner as to create a public nuisance or to adversely affect the public health, safety and welfare.
35 P.S. §§6018.610(2), 6018.610(4).

Appellant next argues that the law does not prohibit the conduct for which it is charged. Appellant specifically refers to the wording of the citation itself, which states that Appellant "operat[ed] a solid waste processing facilities [sic] without a permit," and that

[Appellant] was observed *depositing waste* at his unpermitted transfer station, contrary to 25 Pa. Code §75.21(a), §201 of the Solid Waste Management Act of 1980, 35 P.S. §6018.201, *2nd unlawful* pursuant to §610 of the Act, 35 P.S. §6018.610. (Emphasis added.)

Appellant contends that neither subsection of the Act makes the act of depositing waste a crime. We do not agree. Section 610(2) of the Act prohibits the operation of a solid waste facility without a DER permit; Section 610(4) prohibits the act of storing, collecting, transporting, processing, disposing of solid waste or assisting in these acts in violation of DER regulations. This language most certainly encompasses the act of "depositing" solid waste if it is in violation of DER regulations. Appellant also argues that the citation refers to *2nd unlawful*, when there is no provision for a second offense in the Act, nor any proof that this was Appellant's second offense. The trial court quickly resolved this issue by finding that the phrase *2nd unlawful* was intended to read *"And unlawful"* and was merely a typographical error. We agree with this resolution. We believe that if Appellant had carefully examined its citations, and the relevant sections of the Act, it would have realized that *2nd unlawful* was an error and should have been *"And unlawful."* The phrase *2nd unlawful* simply does not make sense as it stands.

Appellant next challenges agent Holmes' warrantless entry onto its property as being violative of its Fourth Amendment rights, and, as a result, Appellant asserts

that Holmes' testimony should not have been permitted into evidence. We do not agree.[4]

It has been recognized that administrative searches are constitutional, as long as the searches are necessary to further a regulatory scheme and the regulatory presence is sufficiently comprehensive and defined so that the owner of the property would be aware that his/her property would be subject to periodic inspection. *Donovan v. Dewey,* 452 U.S. 594 (1980). Such authority for searches of solid waste disposal plants comes from Section 608 of the Act.[5]

---

[4] The following is a recitation of the facts surrounding agent Holmes' entry onto Appellant's land, as testified by agent Holmes:

Mr. Holmes: I entered the property [by car]. I—I pulled up on the—I pulled up on the—on the ramp, the access ramp to the—compactor building.

. . . .

After I had been there a few minutes in the compactor building Joseph Blosenski, Jr., arrived in his car—truck. He asked me why I was there.

And, I explained to him that I was there to make sure that the transfer station was not in operation.

He said: Is that all?

And I said: Yes.

And then he just left.

[N.T. 14, 34]

[5] Section 608(3) of the Act pertinently provides:

**Production of materials; recordkeeping requirements; rights of entry**

The department and its agents and employees shall:

. . . .

(3) Enter any building, property, premises or place where solid waste is generated, stored, processed, treated or disposed of for the purposes of making such investigation or inspection as may be necessary to ascertain the compliance or noncompliance by any person or municipality with the provisions of this act and the rules or regulations promulgated hereunder. In connection with such in-

The Supreme Court has recently held in *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160 (1987), that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police who acted in objective, reasonable reliance upon a state statute authorizing warrantless administrative searches, but which is subsequently found to violate the Fourth Amendment. In *Krull*, a Chicago detective, relying on a warrantless administrative search provision similar to that involved in this case, conducted a warrantless search. The very next day, a federal district court ruled, in an unrelated case, that the search provision in question was unconstitutional. The Supreme Court based its holding on the officer's good faith reliance on the statute.

The facts in *Krull* are similar to the case before us today. Agent Holmes made his warrantless entry onto Appellant's land in reliance upon Section 608 of the Act, which, at the time of Holmes' entry, was presumed to be constitutional.[6] *See Department of Environmental Resources v. Blosenski Disposal Service*, 110 Pa. Commonwealth Ct. 194, 532 A.2d 497 (1987) (*Blosenski II*). Therefore, we believe that agent Holmes' entry onto Appellant's property was permissible under *Krull* and, hence, that his observations and testimony were properly admitted by the trial court.

---

spection or investigation, samples may be taken of any solid, semisolid, liquid or contained gaseous material for analysis. . . .

35 P.S. §6018.608(3).

[6] In *Commonwealth v. Lutz*, 512 Pa. 192, 516 A.2d 339 (1986), our Supreme Court held that administrative warrantless search provisions were unconstitutional when *nonhazardous* wastes were involved. It was not until the *Lutz* opinion was filed, however, that the constitutionality of Section 608 of the Act was questioned. Agent Holmes' entry onto Appellant's land in July 1981 took place approximately five years prior to the decision in *Lutz*. The United States Supreme Court, on March 24, 1987 granted DER's petition

Additionally, even if *Krull* were not dispositive of the issue, we believe that agent Holmes' actions cannot be held unconstitutional in light of *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134 (1987). In *Dunn,* the Court, relying upon its own precedent, stated that warrantless *naked-eye observations* of an area protected by the Fourth Amendment are *not* unconstitutional.[7] As agent Holmes' testimony consisted solely of "naked eye observations," we believe that his observations were both permissible, and admissible. *Id.*

Appellant next contends that since the citations issued by DER were not timely, *i.e.,* not issued to Appellant "on the spot," the charges should have been dismissed. In making this argument, Appellant refers to Pa. R. Crim. P. 51(A)(3)(a) which requires that the issuing police officer issue the citation to the Appellant *at the time of violation,* where the police officer is in uniform or displaying a badge or other sign of authority.[8] This Court has held in the past that DER agents are acting as "police officers" for purposes of Rule 51 when they act within the scope of their duties in enforcing provisions of the Act. *Department of Environmental Resources v. Blosenski Disposal Service,* 97 Pa. Commonwealth Ct. 489, 509 A.2d 978 (1986), *petition for allow-*

---

for a writ of certiorari and vacated judgment in *Lutz,* remanding the case for consideration in light of *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134 (1987); *Pennsylvania v. Lutz,* 480 U.S. 927, 107 S.Ct. 1560 (1987). Upon remand, the Pennsylvania Supreme Court remanded the case for further proceedings in light of *Dunn; Commonwealth v. Lutz,* 512 Pa. 192, 516 A.2d 339 (1986).

[7] *Dunn,* as here, involved entry onto a large tract of land and naked-eye observations of illegal drug activities within a building; these observations were made without entry into the building.

[8] At the time the citation was issued, the applicable rule was Pa. R. Crim. P. 51(A)(3)(a), 51(A)(3)(b). Today, similar provisions may be found in Pa. R. Crim. P. 55.

*ance of appeal denied,* 514 Pa. 649, 524 A.2d 495 (1987) (*Blosenski I*). Therefore, agent Holmes fell within the ambit of this rule.

In determining whether Pa. R. Crim. P. 51(A)(3)(a) has been impermissibly violated, we are cognizant of former Pa. R. Crim. P. 150[9] which stated:

**Rule 150. Defects in Complaint, Citation, Summons or Warrant**

**(a) Informal Defects:**

No person arrested under a warrant or appearing in response to a summons or citation shall be discharged from custody nor shall any case be dismissed because of any informal defects in the complaint, citation, summons, or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality.[10]

A procedural violation of Criminal Rule 51(A)(3) constitutes a defect in the procedures of this Chapter. *Blosenski I.* Rule 150, therefore, is fully applicable to the case at bar. Rule 150, however, places upon Appellant the burden of showing that it suffered manifest and palpable harm accruing from the alleged noncompliance. This Court has reviewed the record and has failed to discover any evidence which shows Appellant's rights were prejudiced by DER's eighty-two-day delay. As Appellant has failed to meet its burden, it is not entitled to a dismissal on these grounds.

The fifth argument made by the Appellant is that the trial judge acted improperly by ruling on Appel-

---

[9] The relevant procedural rule today is Pa. R. Crim. P. 90.

[10] The official Comment to this rule provides:

"Informal defect" refers to errors which do not prevent the substantive content of the document from being plainly understood.

lant's recusal motion and by denying it. We do not agree.

Appellant based its motion on the fact that the trial judge had been informed of other pending criminal charges against it while the judge was deciding Appellant's post trial motions. At the time the trial judge was informed of these other charges, however, the judge had already found Appellant guilty of both violations of the Act. The only remaining issue before the judge was the propriety of Appellant's post-trial motions. As the trial judge correctly observed in his opinion, it is basic to our system of justice that the mere fact that charges are pending against a defendant is not evidence of his guilt, and the knowledge of guilt on another charge has no relevancy to possible guilt on the charge presently pending before the court. We have reviewed the record thoroughly and find no evidence to support Appellant's allegations of bias, and therefore find this argument devoid of merit. Further, this Court does not agree with Appellant that a trial court judge cannot ever rule upon its own recusal motion.

Appellant next asserts that the trial court made erroneous factual findings unsupported by the record. Specifically, it contends that there is no evidence that agent Holmes observed trash bags being removed from one of Appellant's trucks or that this trash was compacted by Appellant. Also, it contends that there was no evidence presented to show that Appellant had control over the compactor or that the compactor was on the Appellant's property.

A trial court's factual findings will be left undisturbed by a reviewing court where there is evidence to support such findings in the record. *See e.g. Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977). There is such evidence in the record here. First, although agent Holmes did not testify that he actually observed the trash bags being removed and compacted,

we believe that his testimony, as recited earlier in this opinion, is sufficient to support the finding of guilt. Second, Joseph Blosenski, Jr., himself, testified that he was the proprietor of the Appellant facility, and that he has acted in this capacity for twenty-three years. Mr. Blosenski also testified that he exercised complete proprietary authority over the property on which the facility is located, and that he, himself, built the compactor building. We believe this evidence supports the Court's finding that Appellant had owned and/or occupied the compactor facility. We further note that our standard of review requires that the Commonwealth be given the benefit of all reasonable inferences from the facts in the entire trial record. *Meadows.* The facts challenged by Appellant can, indeed, be inferred from the trial record. Thus, we are not persuaded by Appellant's argument.[11]

Appellant further contends that the trial court committed error by not addressing several issues that, it states, were fully argued in its post-trial brief. We do not agree.

We have closely examined Appellant's post-trial brief and have found that those issues briefed were fully addressed by the trial court. There remain, however, ten "issues" listed by Appellant in a single paragraph properly deemed waived by the trial court as not being properly briefed. Simply reciting a raft of issues in one paragraph with references to the notes of testimony does not constitute "briefing" the issues.[12] Appellant

---

[11] Appellant has also alleged that there is no support for the finding the Appellant gave consent to Agent Holmes' search of its property. We have not addressed this issue, as we believe the argument is irrelevant in light of *Dunn.*

[12] In order to help our Court *find* these ten issues, Appellant numbered the issues in the reproduced record. These numbers, however, were not in the certified original record.

should have discussed the relevant grounds for finding error and/or the relevant law pertaining to such issues. *See Commonwealth v. Pittman,* 320 Pa. Superior Ct. 166, 466 A.2d 1370 (1983).

Finally, Appellant argues that the trial court committed error by allowing inadmissible evidence to be entered into the record viz., testimony as to the ownership and control of its plant; a sketch of the site; portions of a transcript of "prior civil testimony"; agent's written inspection report. As these issues were not briefed in the post-trial motions by Appellant, they are deemed waived and not subject to our review.

Based upon the foregoing opinion, we affirm the order of the trial court.

ORDER

NOW, May 24, 1988, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby affirmed.