J-A09030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSEE LEE MOATS | : | |
| | : | |
| Appellant | : | No. 661 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 5, 2020
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000097-2019

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: SEPTEMBER 2, 2021**

Jessee Lee Moats appeals from the judgment of sentence imposed following his conviction for insurance fraud and false reports to law enforcement authorities.[1]  We affirm.

The factual and procedural history underlying this appeal can be summarized as follows.  On May 4, 2018, Moats drove to the home of his brother, James Moats (hereinafter "James") in Maidsville, West Virginia, just before midnight.  Moats picked up James and the two of them proceeded to the Granville Sheetz to buy beer before picking up Moat's wife, Jenna Obrad (hereinafter "Jenna"), in Star City, West Virginia.  The three of them then

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 4117(a)(3), 4906(b)(1).

drove to Moats' and Jenna's trailer near Bobtown, Pennsylvania. Sometime after midnight, Moats and James decided to go to an exotic dance club in Morgantown, West Virginia, and drove there in Jenna's Ford Freestyle. Around 2:30 a.m., after consuming several drinks and purchasing some dances, the two brothers left the club in Jenna's Ford Freestyle with Moats driving the vehicle. Shortly thereafter, Moats crashed the vehicle in West Virginia on or near Exit 1 on Interstate 68. James was injured in the crash, and sustained multiple lacerations, contusions, and a concussion. Nevertheless, Moats and James fled from the scene of the crash up a hill to a nearby Ramada Inn, where they attempted to call relatives to request a ride. Ultimately, Jenna's brother, Cody Obrad, and his girlfriend, Courtney Slavensky, picked up the brothers in the Ramada Inn parking lot. The four of them then drove to the Star City Sheetz, purchased some items, and thereafter dropped off James at his residence. After dropping off James, Courtney Slavensky and Cody Obrad drove to Moats' trailer. Jenna was awake at the time, and saw Courtney Slavensky and Cody Obrad come into the trailer and stay briefly before they left to drive to their home.

Meanwhile, in the early morning hours of May 5, 2018, the Monongalia County Sheriff's Department received a report of a crashed vehicle on Interstate 68 at or near Exit 1. Deputy Ethan Mongold responded to the scene and discovered the crashed Ford Freestyle around mile marker 1 on Interstate 68. Also on May 5, 2018, the Pennsylvania State Police received a report of

a stolen vehicle from Jenna. That afternoon, Trooper Kristina Daerr was dispatched to the Moats/Obrad trailer in response to Jenna's stolen vehicle report. When she arrived, she interviewed Moats and Jenna. In the presence of Moats, Jenna told the trooper that she had parked her Ford Freestyle in its designated spot in front of their trailer at approximately midnight the previous night and that when she woke up at 11:30 a.m. the next morning, it was gone. Jenna further stated that she had left her keys, wallet, four hundred dollars, and her marriage license inside the vehicle. Jenna also told the trooper that she did not know who would have taken the vehicle. The trooper then interviewed Moats, who, in Jenna's presence, confirmed that the vehicle was parked outside the residence at approximately midnight the night before and, when he woke up the next morning at 11:30 a.m., it was gone. Moats also provided the VIN and the temporary registration information for the vehicle, and indicated that he did not know who would have taken it. Later that same day, Jenna filed a claim with her insurance company, GEICO, claiming that her vehicle was stolen.

After leaving the Moats/Obrad trailer, Trooper Daerr reported the vehicle as stolen with the NCIC/CLEAN system used by police departments to track stolen vehicles, and thereafter discovered that the vehicle had been reported as recovered after being involved in a crash in West Virginia. Trooper Daerr then called Jenna to inform her of this development, and again asked if she knew who took the vehicle. Jenna again indicated that she did not know who

would have taken the vehicle, and confirmed that she had filed a claim with GEICO.

After James was dropped off at his residence following the crash, he was taken to the hospital, where he spent the remainder of the morning and part of the afternoon of May 5, 2018. While at the hospital, James communicated to Moats through text messages that he told the doctors at the hospital the truth about what had happened. Moats became upset, and texted James that he "could've lied to the doctors that [James] could've been in a four-wheeler accident, that [James] could've been anything else besides that [James] was in car crash with [Moats]." N.T., 2/26/20, at 88, 93-94. James additionally told his doctors that he was a passenger in the vehicle that crashed, and that his brother was also in the car accident.

On May 7, 2018, Trooper Daerr again met with Jenna and Moats at the State Police Barracks. There, Jenna gave a written statement indicating that she and Moats parked the car near their trailer around midnight, went to bed at 12:30 a.m., and she fell asleep around 1:30 a.m. Jenna further indicated that, when she woke the next morning at 11:40 a.m., the car was missing. Jenna asserted that she believed James was the one who took the vehicle, but conceded that it could have been possible that Moats left without her knowing. The trooper then interviewed Moats, who indicated that he was "99 percent sure his brother [James] had taken the vehicle." *Id*. at 311. When Trooper

- 4 -

Daerr spoke to Moats again on May 9, 2018, he indicated that he had spoken to James on the phone, and that James would not admit to taking the vehicle.

Upon receipt of the insurance claim submission, GEICO representative Ross Lockhart attempted to meet with Jenna to complete her claim. Lockhart attempted to contact Jenna by phone several times, and stopped by her residence to speak with her, but she did not answer his calls and was not home when he stopped there. On May 7, 2018, Trooper Daerr contacted GEICO and indicated that she was investigating a stolen vehicle claim. On May 8, 2018, approximately three days after Jenna submitted the stolen vehicle insurance claim, she called Geico and withdrew the claim. Lockhart made other unsuccessful attempts to contact Jenna and then closed his claim file on June 4, 2018.

Based on her investigation, Trooper Daerr suspected that Moats and Jenna had lied about the vehicle being stolen and filed charges against them for insurance fraud and making false reports to law enforcement. Moats filed a motion for *habeas corpus* relief on the basis that the Commonwealth lacked sufficient evidence to support the charges against him. The trial court conducted pretrial hearings on the motion on July 2, 2019, August 1, 2019, and February 26-27, 2020, before denying the motion.

The matter proceeded to joint trial against Moats and Jenna in February 2020. The Commonwealth presented the testimony of several witnesses, including James, Courtney Slavensky, Cody Obrad, Deputy Mongold, Lockhart,

and Trooper Daerr. Moats presented the testimony of Shala Obrad and Madison Obrad.[2] At the conclusion of trial, the jury found Moats and Jenna guilty of the charges against them. Moats filed post-trial motions which the trial court denied. On June 5, 2020, the trial court sentenced Moats to one to twenty-three and one-half months for conspiracy to commit insurance fraud and one year of concurrent probation for false reports to law enforcement authorities. Moats filed a timely notice of appeal and both Moats and the trial court complied with Pa.R.A.P. 1925.

Moats raises the following issues for our review:

1. The court committed reversible error when it denied [Moats'] motion for *habeas corpus* relief to have the charge of insurance fraud dismissed by orders dated July 2, August 1 and September 10, 2019, and named [Moats] as the driver of [Jenna's] vehicle, which was based upon the perjured testimony of [James].

2. [Moats] challenges the sufficiency of the evidence indicating that there was a lack of evidence connecting [Moats], with the [GEICO] insurance claim.

3. Did the court commit reversible error by permitting the Commonwealth to infer conspiracy between husband and wife when aware that a key prosecution witness had committed perjury, that a law enforcement officer had supported that witness's lack of truthfulness, that another witness had provided a statement from [James] admitting to driving the

---

[2] Madison Obrad testified that James had sent her a Snapchat indicating that he was the driver of Jenna's vehicle when it crashed. However, Trooper Daerr testified that Madison told her that this information was relayed to Madison in a phone call with James after the accident. Madison did not bring her phone with her to trial, and was therefore unable to produce the alleged Snapchat communication with James.

vehicle on the night in question and had presented that evidence to the state trooper who chose to ignore it?

4. [Moats] asserts prosecutorial misconduct utilizing the perjured testimony of [James] to establish that [Moats] was the driver of the vehicle, supporting the charge of insurance fraud, and by referencing concerted efforts by [Jenna] and [Moats] in the closing argument without documentary or testimonial evidence from the Geico representative and the State Trooper to support it.

5. Did the court commit reversible error by failing to provide an instruction for conspiracy to commit insurance fraud for [Moats] who was charged under Title 18 Section 903(c), knowing [James] had committed perjury in both the pre-trial *habeas corpus* hearing and at trial?

6. Did the court commit reversible error when it denied [Moats'] post[-]trial motions, in arrest of judgment, judgment *non obstante verdicto* and for a new trial due to a lack of reasonable grounds on which the jury could have reached its verdict, in light of the documentary and testimonial evidence, including perjured testimony, placed before the jury?

Moats' Brief at unnumbered 3-5 (unnecessary capitalization omitted, issues reordered for ease of disposition).

In his first issue, Moats challenges the trial court's denial of his pretrial motion for *habeas corpus* relief. However, this is not an appealable issue. Like a preliminary hearing, the purpose of a pretrial *habeas corpus* petition is to test the Commonwealth's ability to establish a *prima facie* case. As this Court has explained:

The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime. Its purpose is not to prove the defendant's guilt. Once appellant has gone to

trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial.

***Commonwealth v. Tyler***, 587 A.2d 326, 328 (Pa. Super. 1991). Stated differently, "[a]n adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case." ***Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995); ***see also Commonwealth v. McCullough***, 501 Pa. 423, 461 A.2d 1229, 1231 (Pa. 1983) (holding that the failure to establish a *prima facie* case at a preliminary hearing is clearly immaterial where at the trial the Commonwealth met its burden by proving the offense beyond a reasonable doubt). Accordingly, Moats' challenge to denial of his habeas petition is moot. Moreover, Moats concedes that "the judge did not commit reversible error with his decision in the *habeas corpus* proceeding." Moats' Brief at unnumbered 24. Accordingly, Moat's challenge to the trial court's *habeas corpus* ruling entitles him to no relief.

In his second issue, Moats challenges the sufficiency of the evidence supporting his convictions. Importantly, if an appellant wishes to preserve a claim that the evidence was insufficient to support the verdict, the Pa.R.A.P. 1925(b) concise statement must specify the element or elements upon which he claims that the evidence was insufficient. ***See Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008). Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains more than one element that the Commonwealth must prove beyond a reasonable doubt. ***See***

- 8 -

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). When a concise statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. *Williams*, 959 A.2d at 1257.

Here, Moats was convicted of insurance fraud and making false reports to law enforcement authorities, each of which contains more than one element. In his concise statement, Moats styled his sufficiency challenge as follows:

> [t]he sufficiency of the evidence presented by the Commonwealth was inadequate to sustain a conviction, based upon testimony of the [GEICO] representative, cross-examination of [James], testimony of Trooper Da[err] and Madison Obrad, confirming perjury of [James], and a lack of evidence pertaining to [Moats] and [GEICO].

Concise Statement, 7/22/20, at unnumbered 2.

Moats failed to indicate in his concise statement whether he was challenging the sufficiency of the evidence supporting both of his convictions or only one of his convictions. Moreover, Moats failed to identify the elements of insurance fraud and/or false reports upon which he alleged the evidence was insufficient. Accordingly, due to these defects in Moats' concise statement, his sufficiency challenge is waived.[3]

_____

[3] We note that the Commonwealth failed to object to the aforementioned defects in Moats' concise statement. We also note that the trial court superficially addressed Moats' sufficiency challenge in its Pa.R.A.P. 1925(a) opinion. However, the Commonwealth's failure to object and the presence of a trial court opinion addressing the issue are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, and not

*(Footnote Continued Next Page)*

In his third issue, Moats contends that the trial court committed reversible error by permitting the prosecution to commit prosecutorial misconduct by inferring, during his closing arguments, that there was a conspiracy between Moats and Jenna.

We must first determine whether Moats has properly preserved this issue for appellate review. Our Supreme Court has held that in order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must raise a contemporaneous objection before the trial court, and then request either a mistrial or curative instructions. *See Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008); *see also Commonwealth v. Jones*, 460 A.2d 739, 741 (Pa. 1983) (holding that, even where defense counsel immediately objected to the prosecutor's conduct, a claim of prosecutorial misconduct is waived where defense counsel failed to request mistrial or curative instructions)

Here, Moats failed to direct this Court to the place in the record where he preserved his claim in the trial court by raising an objection to the purported prosecutorial misconduct, and by thereafter moving for a mistrial or a curative instruction. *See* Pa.R.A.P. 2119(e) (statement of place of raising

_____

in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. *Williams*, 959 A.2d at 1257. Thus, we find Pa.R.A.P. 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion addressing a sufficiency claim. *Id*.

or preservation of issues). Moreover, this Court has reviewed the portion of the notes of testimony cited by Moats as containing the objectionable comments, and found no place therein where Moats' counsel raised any objection to the prosecutor's comments or moved for a mistrial or curative instruction. Thus, Moats failed to preserve his third issue for our review.

In his fourth issue, Moats alleges further prosecutorial misconduct. Moats contends that "[t]he prosecution was clearly placed on notice that there were serious issues of false testimony but did not act positively to address it." Moats' Brief at unnumbered 21. Moats claims that his brother, James, provided false testimony that Moats was the driver of Jenna's car at the time of the crash. Moats maintains, without explanation, that the falsity of James' testimony was brought forward by Deputy Mongold and Madison Obrad. Moats contends that "[t]he prosecutor was sitting at his table when all of this evidence came out" and "had a duty to address the contradictory nature of [James'] testimony and the testimony of the Trooper who sat on the truth, doing nothing about it, until it was revealed at trial." *Id*. at unnumbered 20, 21.

Moats provides no authority for his claim that the prosecutor had a "duty to act" on his behalf based on the contradictory nature of a witness' testimony. *See* Pa.R.A.P. 2119(a) (providing that the appellant's brief shall include "a discussion and citation of authorities as are deemed pertinent"). Moreover, Moats fails to direct this Court to the place in the record where he preserved

this particular claim in the trial court by objecting to the prosecutor's conduct and either moving for a mistrial or requesting a curative instruction based on such conduct. **See** Pa.R.A.P. 2117(c); **see also Powell**, 956 A.2d at 423; **Jones**, 460 A.2d at 741. Thus, Moats failed to preserve his fourth issue for our review.

In his fifth issue, Moats claims that the trial court erred by failing to instruct the jury on conspiracy to commit insurance fraud. "Our standard of review when considering the denial of jury instructions is one of deference -- an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. DeMarco**, 809 A.2d 256, 260-61 (Pa. 2002).

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, we are mindful of the following principles:

> [I]t is the function of this [C]ourt to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

***Commonwealth v. Brown***, 911 A.2d 576, 582-83 (Pa. Super. 2006) (quotation marks omitted).

Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. ***See Commonwealth v. Hairston***, 84 A.3d 657, 668 (Pa. 2014). However, "[i]nstructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." ***Commonwealth v. Patton***, 936 A.2d 1170, 1176 (Pa. Super. 2007). Thus, "[a] trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict." ***Commonwealth v. Browdie***, 671 A.2d 668, 673-74 (Pa. 1996). The reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. ***See Hairston***, 84 A.3d at 668.

Moats contends that the trial court erred by refusing to instruct the jury on the charge of conspiracy to commit insurance fraud. According to Moats, he was charged with insurance fraud, but "[s]ometimes, it was referred to as conspiracy to commit insurance fraud." Moats' Brief at unnumbered 17. Moats claims that he wanted a jury instruction on conspiracy to commit insurance fraud because there was no evidence that he and Jenna conspired to submit an insurance claim to GEICO. Moats claims that the prosecutor

suggested in a sidebar that Moats had conspired with Jenna, but asserts that "the subject had been debunked by . . . the [GEICO] representative and the testimony of Trooper Daerr." *Id*. at unnumbered 18 (citations to the record omitted).

As explained above, the trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict. *See Browdie*, 671 A.2d at 673-74. Here, Moats was not charged with criminal conspiracy. Thus, conspiracy to commit insurance fraud was not an issue in the case.

Moreover, Moats concedes that there was no trial evidence that would support a criminal charge that he conspired with Jenna to submit the insurance claim to GEICO. Thus, an instruction regarding conspiracy to commit insurance fraud would have served no purpose other than to confuse the jury. *See Patton*, 936 A.2d at 1176. Accordingly, the trial court did not err in declining Moats' request for such an instruction, and Moats' fifth issue merits no relief.

In his final issue, Moats contends that the trial court committed reversible error by denying his post-trial motions for judgment *non obstante verdicto* based on lack of reasonable grounds, and for an arrest of judgment.

Initially, we observe that the court procedure of entering a judgment *non obstante veredicto* does not extend to criminal prosecutions. *See Commonwealth v. Blassingale*, 581 A.2d 183, 191 (Pa. Super. 1990);

*Commonwealth v. Wright*, 119 A.2d 492 (Pa. 1956).  Thus, the trial court properly denied Moats' request for a judgment *non obstante veredicto*.

When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining "the absence or presence of that quantum of evidence necessary to establish the elements of the crime.  At this stage in the proceedings, the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence."  *Commonwealth v. Marquez*, 980 A.2d 145, 147-48 (Pa. Super. 2009) (*en banc*).

This Court's standard of review of the trial court's ruling on a motion for arrest of judgment is as follows:

> the sufficiency of the evidence must be evaluated upon **the entire trial record**.  All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom.  The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove.

*Commonwealth v. Melechio*, 658 A.2d 1385, 1387 (Pa. Super. 1995) (citations omitted) (emphasis in original).  Hence, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, is sufficient to support all elements of the offense.  **See Commonwealth v. Moreno**, 14 A.3d 133 (Pa. Super. 2011).

As explained above, a person commits the offense of insurance fraud when he or she

> [k]nowingly and with the intent to defraud any insurer or self-insured, assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented

- 15 -

to any insurer or self-insured in connection with, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

18 Pa.C.S.A. § 4117(a)(3).

A person commits the offense of false reports to law enforcement authorities when he or she "reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur." *See* 18 Pa.C.S.A. § 4906(b)(1).

Moats contends that the Commonwealth failed to prove that there had been conspiracy to commit insurance fraud. Moats additionally points to several "problems" with the verdict, including "Lockhart's testimony," the use of "testimony from a key witness who had multiple instances which supported his untruthfulness from other witnesses and established that he was seriously intoxicated and had suffered a concussion," and "side-bar discussions about how the prosecutor could infer discussions about conspiracy between husband and wife, mostly because they slept in the same bed the night of the incident." Moats' Brief at unnumbered 12. Moats also claims that a new trial[4] is warranted because "Trooper Daerr was aware of the issues of truthfulness surrounding James . . ., but deliberately chose to ignore it" and "[t]here is no

---

[4] A new trial is warranted when the verdict is against the weight of the evidence. *See Commonwealth v. Meadows*, 369 A.2d 1266, 1270 (Pa. 1977). Moats has not argued in this appeal that the verdict is against the weight of the evidence. Thus, this remedy is unavailable to him.

evidence to suggest that [the trooper] pointed out the anomalies to the prosecutor, although he chose to ignore them during his closing." *Id*. at unnumbered 13.

As explained above, Moats was not charged with criminal conspiracy; thus, the Commonwealth was not required to prove that there had been conspiracy between Moats and Jenna to commit insurance fraud. Therefore, the trial court could not grant Moats an arrest of judgment on that basis.

Moreover, when ruling on a post-verdict motion for arrest of judgment, a trial court may not reconcile contradictions and discrepancies in trial testimony. *See Commonwealth v. Melechio*, 658 A.2d 1385, 1388-89 (Pa. Super. 1995). Nor can the trial court make a redetermination of credibility and weight of the evidence when considering a motion for arrest of judgment. *See Marquez*, 980 A.2d at 147-48. Accordingly, while Moats claims that there was some evidence that James was untruthful, the trial court was unable to grant his motion for arrest of judgment on that basis.

Having identified no basis on which to challenge the sufficiency of the evidence supporting his convictions, we conclude that Moats' challenge to the trial court's denial of his motion for arrest of judgment warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/2/2021