J-A02024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY MAGLIETTA | : | |
| | : | |
| Appellant | : | No. 1869 MDA 2017 |

Appeal from the Judgment of Sentence August 7, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000807-2016

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 07, 2019**

Appellant, Anthony Maglietta, appeals from the August 7, 2017 Judgment of Sentence entered in the Lancaster County Court of Common Pleas following his jury conviction of Aggravated Assault and Conspiracy to Commit Aggravated Assault.[1]  In particular, Appellant challenges the sufficiency of the evidence supporting his convictions and the discretionary aspects of his sentence.  After careful review, we affirm.

The Commonwealth charged Appellant with the above crimes following a violent altercation in the early morning hours of December 25, 2015, in which Appellant and his co-defendants, Francisco Camacho ("Camacho"), Alexander Rodriguez-Cruz ("Cruz"), Joshua Ellis ("Ellis"), and Raymond J. Lee,

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and 903, respectively.

III ("Lee"), violently assaulted Shaliek Rivera (the "victim"), and left him seriously injured.[2]

The relevant facts, as gleaned from the record, including the Notes of the Testimony, are as follows. Appellant owned Molly's Pub and Carry-Out, a bar and bottle shop located on the corner of Shippen and Chestnut Streets in Lancaster. Ellis, Lee, and Cruz worked for Appellant as security guards at Molly's Pub. Just before 1:00 AM on December 25, 2015, Ellis, Cruz, Appellant, and Lee were outside of Molly's Pub, when the victim approached the group. The victim greeted Ellis, and Lee approached them.[3] Lee and the victim engaged in a short conversation during which Lee became "animated" and proceeded to strike the victim violently on the head, while Appellant, Ellis, and Cruz stood behind Lee, watching the assault. The strike immediately rendered the victim unconscious and prone. The victim remained unconscious and convulsing, lying partially in Shippen Street, for approximately 10 minutes. Eventually, the victim regained consciousness, stood up, and began to wander around, stumbling. The victim stumbled to a residence next door

---

[2] The jury also convicted Cruz, Ellis, and Lee of the same offenses. They have filed direct appeals of their Judgments of Sentence which are pending at Docket Numbers 1845 MDA 2017; 1854 MDA 2017; and 78 MDA 2018, respectively. On May 12, 2017, co-defendant Camacho entered an open guilty plea to one count of Robbery, 18 Pa.C.S. § 3701(a)(1)(v), at Docket No. CP-36-CR-806-2016, for which the trial court sentenced him on August 10, 2017, to a term of one to five years' incarceration. Camacho did not file a direct appeal from his Judgment of Sentence.

[3] Trial testimony indicated that Ellis and the victim were friends and had been roommates.

to Molly's Pub, which belonged to Appellant, in an attempt to get help. Appellant, Lee, Ellis, and Cruz proceeded to run after the victim.

Lee then grabbed the victim and threw him back to the ground, whereupon he punched and kicked the victim. The victim remained on the ground for an extended period of time, during which someone picked the victim's pockets.

The victim roused himself again and then attempted to enter a nearby vehicle. Lee, in the presence of Appellant, Cruz, and Ellis, again thwarted the victim's efforts to obtain help and sanctuary, by removing the victim from the vehicle. The men placed the victim over a brick planter next to the Carry-Out and all proceeded to beat, kick, and punch the victim into unconsciousness. When the men finished beating the victim, Lee carried him to an area not far from Molly's Pub and left him there. The victim eventually stumbled back to Molly's Pub and fell down across the street from Molly's Pub. The victim laid there for approximately 20 minutes before Appellant, Cruz, Ellis, and Lee carried him to a secluded area behind Appellant's truck. The victim laid there, again unconscious, for approximately another 30 minutes before he regained consciousness, and wandered, disoriented, back across the street. Appellant, Cruz, Ellis, and Lee refrained from assaulting the victim any further, but they did not provide him with any assistance.

The victim then proceeded to wander to a house on Chestnut Street whereupon the residents inside alerted the police. At first, the police took the victim into custody on suspicion of public drunkenness but then, upon realizing

that the victim was seriously injured, called EMS to transport the victim to the hospital as a trauma patient.

The victim sustained serious injuries from the assaults including bleeding, swelling, and bruising of his brain, and a fractured nose. He remained unconscious in the hospital for approximately one week following the attack. The victim also had bone fragments in his ear, which affected his equilibrium and prevented him from moving on his own for two or three months. At the time of trial, he continued to suffer from short-term memory loss and had no recollection of the attack.

Lancaster Police obtained videotaped footage of the incident from Molly's Pub's security cameras and from the Lancaster Community Safety Coalition, a group that has installed security cameras around Lancaster City.[4,5]

Appellant's three-day jury trial commenced on May 22, 2017. The Commonwealth presented the testimony of Police Officer Herbert Watson, Detective Sergeant John Duby, Sergeant Michael John Gerace, and Sergeant Ronald William Breault, III, all of the Lancaster City Police Department. The

---

[4] One security camera belonging to the Lancaster Community Safety Coalition is located at the intersection of Chestnut and Shippen Street, across from Molly's Pub.

[5] The Commonwealth also charged Appellant with one count of Tampering with Evidence, 18 Pa.C.S. § 4910(1), in connection with his attempt to tamper with and/or conceal the images of the incident recorded by the cameras at Molly's Pub. The jury convicted Appellant of that charge, but the trial court subsequently granted his Post-Trial Motion for Judgment of Acquittal as to that conviction.

victim also testified. In addition, the court admitted the videotaped footage of the incident into evidence. Appellant testified on his own behalf and presented the testimony of one character witness. Lee presented the testimony of a witness to the crime—his son, Jobe Lee. Neither Cruz nor Ellis presented any evidence or testimony.

On May 25, 2017, the jury convicted Appellant of Aggravated Assault and Conspiracy. The trial court ordered a Pre-Sentence Investigation ("PSI") Report and deferred sentencing until its completion.

On August 7, 2017, after consideration of the PSI Report and argument of counsel, the trial court sentenced Appellant to an aggregate term of five and one half to eleven years' incarceration and ordered Appellant to pay $7,786.37 in restitution.[6]

Appellant filed a timely Post-Sentence Motion in which he challenged the sufficiency and weight of the evidence and the discretionary aspects of his sentence. On November 20, 2017, the trial court denied Appellant's Post-Sentence Motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

---

[6] Appellant's sentence was comprised of one five and one half to eleven year term of incarceration for his Aggravated Assault conviction—an aggravated range sentence—and one concurrent term of three to six years' incarceration for his Conspiracy conviction. A standard-range guideline sentence for a conviction of Aggravated Assault is 36 to 54 months' incarceration. **See** 204 Pa.Code § 303.16(a).

Appellant raises the following two issues on appeal:

1. Whether the evidence presented at Appellant's jury trial was insufficient to prove him guilty of both [A]ggravated [A]ssault (as a principal or an accomplice) and [C]riminal [C]onspiracy to [C]omit [A]ggravated [A]ssault, beyond a reasonable doubt?

2. Whether the trial court's sentence imposed on Appellant's [A]ggravated [A]ssault conviction at the absolute top of the aggravated sentencing range was manifestly excessive and clearly unreasonable under the circumstances of Appellant's case? Whether the court abused its discretion when it relied upon inaccurate and inappropriate findings as justification for Appellant's sentence, specifically: whether the court held Appellant to a higher standard as a business owner; punished him more severely for temporarily "fast forwarding" video footage he retained and that served as the basis of his own prosecution; and imposed a harsher sentence on Appellant than was imposed on his equally, if not more[,] culpable[] co-defendants?

Appellant's Brief at x.

In his first issue, Appellant claims that the Commonwealth's evidence was insufficient to support his convictions of Aggravated Assault and Conspiracy. *Id.* at 21.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on

circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

Under Pennsylvania law, "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Intent to cause serious bodily injury can be proven by wholly circumstantial evidence, and may be inferred from acts or conduct, or from attendant circumstances. *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).[7] "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Intent can be proven

---

[7] "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i).

by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Miller***, 172 A.3d 632, 641 (Pa. Super. 2017) (citations and quotation marks omitted).

"A person is guilty of conspiracy with another person or persons to commit a crime if[,] with the intent of promoting or facilitating its commission[,] he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903.

In order to convict a defendant of Criminal Conspiracy, the Commonwealth must prove that the defendant "1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Feliciano***, 67 A.3d 19, 25-26 (Pa. Super. 2013) (citation omitted). The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Commonwealth v. Devine***, 26 A.3d 1139, 1147 (Pa. Super. 2011).

Importantly, once the Commonwealth establishes the existence of a conspiratorial agreement, a defendant "is still criminally liable for the actions of his co-conspirator taken in furtherance of the conspiracy" even if he is not

a principal in the act. ***Commonwealth v. Johnson***, 719 A.2d 778, 785 (Pa. Super. 1998).

Appellant alleges that the Commonwealth's evidence of his mere presence at the scene of the assault and his failure to summon medical attention for the victim is insufficient to establish that he acted in concert with his co-defendants. Appellant's Brief at 35-36. He further contends that the evidence of him "conversing, smiling, and/or doing a 'kicking motion' while speaking with the son of the man who committed the vicious assaults showcased in the video footage" is insufficient to prove that he acted in agreement with his co-defendants or with the intent to cause serious bodily injury. ***Id.*** at 36. Last, he claims that he struck the victim "spontaneously and independently," and not in concert with his co-defendants. ***Id.*** at 38. Appellant concludes that, because the Commonwealth's evidence was insufficient to support his Conspiracy conviction, its evidence in support of his Aggravated Assault conviction on that basis was necessarily insufficient. ***Id.*** at 50-62. Appellant also avers that the Commonwealth's evidence in support of his Aggravated Assault conviction as a principal actor was insufficient because his "brief and insignificant physical contact with the victim had little to no chance of causing serious bodily injury." ***Id.*** at 46-47.

The trial court summarized the Commonwealth's evidence in support of Appellant's convictions as follows:

> [T]he Commonwealth presented evidence that [Appellant] was more than merely present, but, rather was actively involved in the assaults upon the Victim. Sergeant Michael John Gerace, a patrol

sergeant with the Lancaster City Bureau of Police, where he has been employed with said department for [17] years, testified that during the investigation he reviewed surveillance video footage from the Lancaster Community Safety Coalition of the assault in this matter. Sergeant Gerace was also able to obtain footage from a surveillance camera at Molly's Pub, the scene of the assault. Sergeant Gerace had the ability to view much of the assault which had taken place from his review of the video footage. Sergeant Gerace observed [Appellant] standing in the area of Molly's Pub take-out on Shippen Street in the area of a flower box with the co-defendants and the victim. Sergeant Gerace observed that Mr. Lee, a co-defendant, had punched the victim on the left side of his face, had pushed the victim to the ground, and had further punched and kicked the victim in the face. Sergeant Gerace explained that the video footage showed Mr. Lee scoop up the victim, while being followed by co-defendants, Mr. Ellis and Mr. Rodriguez-Cruz. Sergeant Gerace described the victim, at this point of the assault as "a virtually unconscious body." He then viewed the victim being taken to an unknown location by the co-defendants, Mr. Lee, Mr. Ellis, and Mr. Rodriguez-Cruz, who return[ed] to Molly's Pub without the victim and sp[oke] to [Appellant], all while smiling. Sergeant Gerace explained that the video footage then depicted the victim coming back to the area between Molly's Pub and the adjoining home of [Appellant]. All perpetrators, including [Appellant], followed the victim at this time and placed him in the flower box. Sergeant Gerace observed the victim, who was lying back on a planter on the side of Molly's Pub, being kicked in the head by [Appellant]. After the victim's body was dumped, [Appellant was] talking to another individual and ma[de] a kicking motion while smiling.

Trial Ct. Op., 3/28/18, at 7-8 (citations omitted).

Following this court's review of the Notes of Testimony and other evidence of record, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth as verdict-winner, the Commonwealth presented sufficient evidence from which the jury could reasonably conclude that Appellant had committed the offenses of Aggravated Assault and Conspiracy. The Commonwealth's evidence specifically demonstrated that

Appellant: (1) had a prior relationship with his co-defendants; (2) was aware of the crime while it was ongoing in front of him; and (3) actively joined his co-defendants in assaulting the victim by delivering several blows to the victim's head. *Id.* Thus, it was reasonable for the jury to find that "the totality of the actions of [Appellant] taken in concert with the actions of accomplices and co-conspirators unfortunately and unquestionably" caused the victim serious bodily injury. *Id.* at 8. Appellant is, therefore, not entitled to relief on this claim.

In his second issue, Appellant claims that the trial court abused its discretion in imposing a sentence at the top end of the aggravated range and imposing on him a "higher standard as a business owner." Appellant's Brief at 64-65. Appellant contends that the trial court's explanation in its Opinion of its reasons for imposing this sentence "either explicitly contradicts the court's statements made on the record at the time of Appellant's sentencing or it renders the sentencing transcript arbitrary," but in either case the trial court's sentence undermines the fundamental norms of the sentencing process. *Id.* at 66. Appellant also alleges that the court abused its discretion when it improperly considered the fact that, when showing police investigators the video captured by Molly's Pub's surveillance cameras, Appellant fast-forwarded through the recording of the assault as an aggravating factor and indicative of Appellant's lack of remorse. *Id.* at 72. He claims this finding is "contradicted by the record" and "objectively illogical." *Id.* Last, Appellant claims that the court's sentence was manifestly unreasonable because it was

harsher than the sentences imposed on his equally, if not more culpable, co-defendants. *Id.* at 75-76.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000).

Prior to reaching the merits of a discretionary sentencing issue, we must determine whether: (1) appellant has filed a timely notice of appeal; (2) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) appellant's brief has a fatal defect; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Here, Appellant filed a timely Notice of Appeal. Our review of Appellant's Motion for Reconsideration of Sentence indicates that he preserved his claim that the court abused its discretion in imposing an aggravated-range sentence. Appellant has also included a separate Pa.R.A.P. 2119(f) Statement in his Brief to this Court. We, thus, consider whether the issue Appellant preserved raises a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

- 12 -

which underlie the sentencing process." ***Sierra***, ***supra*** at 912-13 (citation and quotation omitted).

An assertion that the trial court relied on impermissible or inaccurate factors when imposing sentence can raise a substantial question. ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017). Thus, we proceed to review the merits of Appellant's claim that his aggravated range sentence was excessive and an abuse of the court's discretion.

After a careful review of the parties' arguments and the record, we conclude that this issue warrants no relief, and we adopt the comprehensive Opinion of the Honorable Merrill M. Spahn, Jr. as to this issue as our own. ***See*** Trial Ct. Op. at 11-16 ((1) detailing its extensive consideration of Appellant's PSI report, mental health report, age, limited prior criminal history, educational history, family background, involvement in the community, the severity of the crime, and rehabilitative needs when fashioning Appellant's individualized sentence; (2) explaining that it did not consider Appellant's status as the owner of Molly's Pub when fashioning his sentence, but that it did consider Appellant's handling of the surveillance video as demonstrative of his lack of remorse and cooperation with police; and (3) concluding that Appellant's sentence did not violate the fundamental norms underlying the sentencing process). ***See also*** N.T. Sentencing, 8/7/17, at 19-26.

Judgment of Sentence affirmed. The parties are directed to attach a copy of the trial court's March 28, 2018 Opinion to any future filings.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2019

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
                                    :
                        vs.         :    No.    CP-36-CR-0000807-2016
                                    :
ANTHONY MAGLIETTA                   :

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

BY: SPAHN, JR., J.

Defendant has filed a direct appeal to the Superior Court of Pennsylvania raising claims regarding the sufficiency of the evidence presented at trial and challenging the discretionary aspects of his sentence. Said claims will be thoroughly addressed herein.

On January 5, 2016, Defendant was charged with allegedly having committed one count of Aggravated Assault[1]; one count of Criminal Conspiracy to Commit Aggravated Assault[2]; one count of Obstructing Administration of Law or Other Governmental Function[3]; and, one count of Tampering with or Fabricating Physical Evidence[4] arising out of an incident that occurred on December 25, 2015 in Lancaster City, Lancaster County, Pennsylvania.

On May 19, 2017, the instant matter proceeded to trial before the below signed member of the trial court and a jury. On May 25, 2017, Defendant was found guilty on all four (4) charged counts. Additionally, by way of special inquiry, the jury unanimously found that the victim suffered serious bodily injury as the result of the instant offenses. The trial court ordered a Pre-Sentence Investigation and deferred sentencing pending the completion of said Pre-Sentence Investigation.

---

[1] 18 Pa. C.S. §2702(a)(1)
[2] 18 Pa. C.S. §903
[3] 18 Pa. C.S. §5101
[4] 18 Pa. C.S. §4910(1)

The trial court sentenced Defendant on August 10, 2017 as follows:

Count I - Aggravated Assault - Not less than five and one-half (5 1/2) years nor more than eleven (11) years incarceration, plus costs

Count II – Criminal Conspiracy to Commit Aggravated Assault - Not less than three (3) years nor more than six (6) years incarceration, plus costs

Count III – *Nol prossed* by the Commonwealth with costs placed on the County of Lancaster

Count IV – Tamper with/Fabricate Physical Evidence – no further penalty was imposed by the court

The sentences were imposed concurrently. As such, the trial court imposed an aggregate sentence of not less than five and one-half (5 1/2) years nor more than eleven (11) years incarceration. The court also set restitution in the amount of $7,786.37 and indicated Defendant was not eligible for participation in the RRRI initiative in light of the nature of the current offenses and noted that the Commonwealth was unwilling to waive said ineligibility. (N.T., Sentencing, August 10, 2017 at pp. 26-27).

Defendant filed a timely Post-Sentence Motion on August 17, 2017 requesting a judgment of acquittal on all charges, a new trial on the Tampering with Physical Evidence charge, and modification of sentence imposed. Defendant filed a Brief in Support of said motion on September 22, 2017. The Commonwealth filed a Memorandum in Opposition thereto on October 19, 2017. The trial court granted in part and denied in part Defendant's Post-Sentence Motion by way of Court Order entered on November 20, 2017. Specifically, the trial court granted Defendant's motion for judgment of acquittal of the Tampering/Fabricating Physical Evidence charge and denied Defendant's remaining motions.

2

On December 5, 2017, Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania. By way of Court Order dated January 2, 2018, Defendant was directed to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Defendant filed his Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) on January 23, 2018. As such, this matter is ripe for review.

## DISCUSSION

In his Concise Statement of Matters Complained of on Appeal, Defendant raises the following matters for appellate review:

1. This Court erred when it denied the defendant's motion for judgment of acquittal and found there was sufficient evidence to convict the defendant of aggravated assault, as a principal or accomplice, beyond a reasonable doubt.

2. This Court erred when it denied the defendant's motion for judgment of acquittal and found there was sufficient evidence to convict the defendant of criminal conspiracy to commit aggravated assault, beyond a reasonable doubt.

3. This Court's sentence imposed at the absolute top of the aggravated range was manifestly unreasonable under the circumstances of the defendant's case, and an abuse of discretion, as the Court held the defendant to a higher standard as a business owner; punished him more severely for "fast forwarding" the same video footage the defendant retained and also provided the foundation of the Commonwealth's prosecution; and imposed a harsher sentence on the defendant than was imposed on his equally, if not more culpable, co-defendants.

(N.T, Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), January 23, 2018).

### A. SUFFICIENCY OF THE EVIDENCE

Defendant's initial claims of error challenge the sufficiency of the evidence presented at trial with respect to Defendant's convictions of Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault.

3

In reviewing Defendant's challenge to the sufficiency of the evidence, the appellate court need view the evidence produced at trial in the light most favorable to the Commonwealth as verdict winner to determine if it is sufficient to allow a reasonable jury to find each element of the offenses charged beyond a reasonable doubt. Commonwealth v. Slocum, 86 A.3d 272, 275 (Pa. Super. 2014).

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

Id.

For Defendant to prevail on his claim that the evidence is insufficient, it must be said that accepting all the evidence and all reasonable inferences drawn from the evidence upon which, if believed, the verdict could properly have been based, that the evidence would be insufficient in law to find beyond a reasonable doubt that he is guilty of the crime charged. Commonwealth v. Meadows, 369 A.2d 1266, 1268 (Pa. 1977); Commonwealth v. Quel, 27 A.3d 1033, 1037-38 (Pa. Super. 2011). It is axiomatic that "[b]eyond a reasonable doubt" has never been construed to equate to "beyond all doubt." See, e.g., Commonwealth v. Jones, 858 A.2d 1198, 1201-04 (Pa. Super. 2004).

The Pennsylvania Crimes Code defines the crime of Aggravated Assault as follows:

> (a) Offense defined. ---
>
> > A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

18 Pa. C.S.A. §2702(a)(1).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a).

As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. §2301. "A person acts intentionally with respect to a [serious bodily injury] ... when it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(1). "A person acts knowingly with respect to a [serious bodily injury] ... when he is aware that his conduct is of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(2). "A person acts recklessly with respect to a [serious bodily injury] .... when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa. C.S.A. §302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Id.* Such recklessness is shown by the kind of reckless conduct from which a life-threatening injury is almost certain to occur. See, Commonwealth v. O'Hanlon, 653 A.2d 616 (Pa. 1995); Commonwealth v. McHale, 858 A.2d 1209 (Pa. Super. 2004); Pa.S.S.J.I. (Crim.) 15.2702B.

"A person is legally accountable for the conduct of another person when ... (3) he is an accomplice of such other person in the commission of the offense." 18 Pa. C.S.A. §306. "A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: ... (ii) aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306; See, Commonwealth v. Vining, 744 A.2d 310, 321 (Pa. Super. 2000) (transcending mere association, accomplice liability requires active and purposeful participation in criminal activity with others), *appeal dismissed as improvidently granted*, 774 A.2d 1246 (Pa. 2001).

5

Section 903(a)(1) of the Crimes Code provides:

§ 903 Criminal Conspiracy

(a) Definition of conspiracy —A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;
* * *

(b) Scope of conspiratorial relationship. If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

18 Pa. C.S.A. § 903(a)(1), (b). To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy. Jones, *supra.* at 121. Additionally:

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121-22. Circumstances such as an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant to prove a conspiracy, when "viewed in conjunction with each other and in the context in which they occurred." Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002),

6

*appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002) (internal citations and quotation marks omitted) (emphasis added).

At trial in this matter, the Commonwealth presented evidence that Defendant was more than just merely present, but, rather, was actively involved in the assaults upon the victim. Sergeant Michael John Gerace, a patrol sergeant with the Lancaster City Bureau of Police, where he has been employed for seventeen years, testified that during the investigation he reviewed surveillance video footage from the Lancaster Community Safety Coalition of the assault in this matter. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 136; Commonwealth's Exhibits 5-9). Sergeant Gerace was also able to obtain video footage from a surveillance camera located at Molly's Pub, the scene of the assault. (N.T., Jury Trial, Volume 1 of IV, May 22, 2017 at p. 151; Commonwealth's Exhibits 5-9). Sergeant Gerace had the ability to view much of the assault which had taken place from his review of the video footage. (*Id.*) Sergeant Gerace observed Defendant standing in the area of Molly's Pub take-out on Shippen Street in the area of a flower box with the co-defendants and the victim. (*Id.* at pp. 165-168). Detective Gerace observed that Mr. Lee, a co-defendant, had punched the victim on the left side of his face, had pushed the victim to the ground, and had further punched and kicked the victim in the face. (*Id.* at pp. 168-177). Sergeant Gerace explained that the video footage showed Mr. Lee scoop up the victim, while being followed by co-defendants, Mr. Ellis and Mr. Rodriguez-Cruz. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 176 and 187). Sergeant Gerace described the victim, at this point of the assault as "a virtually unconscious body." (*Id.*). He then viewed the victim being taken to an unknown location by the co-defendants, Mr. Lee, Mr. Ellis and Mr. Rodriguez-Cruz, who return to Molly's Pub without the victim and speak to Defendant, all while smiling. (*Id.*). Sergeant Gerace explained that the video footage then depicted the victim coming back to the area between Molly's Pub and the adjoining home of Defendant. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 177). All perpetrators, including

7

Defendant, followed the victim at this time and placed him in the flower box. (*Id.* at pp. 191-192). Sergeant Gerace observed the victim, who was lying back on a planter on the side of Molly's Pub, being kicked in the head by Defendant. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 186). After the victim's body was dumped, Defendant is talking to another individual and makes a kicking motion while smiling. (*Id.* at p. 187-188). As the result of this vicious and prolonged assault, the victim suffered multiple injuries, including black eyes, fragmented bones in his ears, injuries to his nose, pain to his ribs, bleeding on his brain, the inability to properly walk for several months, and lingering memory issues. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 86-88).

In this matter, the trial court firmly believes that the totality of the evidence presented at trial established that Defendant's actions supported his convictions of Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault. This defendant directly physically assaulted the victim numerous times; followed the victim with the co-defendants; and, left the victim lying unconscious for an extended time without summoning medical attention. While there can never be a precise determination as to whether this Defendant's blows resulted in the serious bodily injury suffered by the victim, there can simply be no doubt that the totality of the actions of this Defendant, taken in concert with the actions of accomplices and co-conspirators, unfortunately and unquestionably achieved such a result. Although the Commonwealth was unable to present any direct evidence regarding any explicit agreement between Defendant and his co-defendants, based upon the factual background established by the Commonwealth, there can, again, be no doubt that such an agreement existed and was proven, by circumstantial evidence, beyond a reasonable doubt. As noted above, Defendant: was present for the entirety of this prolonged series of violent assaults upon the victim; was actively participating in and aiding his co-conspirators during said assaults; was repeatedly directly physically punching and kicking the victim during said assaults; and, was acting with a unified purpose with his co-conspirators.

8

Therefore, upon consideration of the totality of the evidence presented at trial and for the reasons as set forth above, the verdict in the instant matter is supported by sufficient evidence presented at trial. Throughout the entirety of the litigation in this matter and presently, on appeal, Defendant has actively attempted to minimize his involvement in these vicious assaults. This position was firmly rejected by the jury. While Defendant is, no doubt, displeased with the verdict reached by the jury in this matter, such verdict is supported by the evidence presented at trial and all relevant inferences therefrom. It is quite apparent that the jury resolved the relevant credibility issues in favor of the witnesses presented by the Commonwealth and chose to specifically reject the testimony and arguments presented by Defendant and Co-Defendants. It is ultimately the purview of the jury, as fact finder, to make such credibility determinations. The trial court cannot weigh upon the credibility of the witnesses. Accordingly, Defendant's claim as to sufficiency of the evidence in this regard must fail.

## B. DISCRETIONARY ASPECT OF SENTENCE

Defendant challenges the discretionary aspects of sentencing alleging that the sentence imposed was manifestly unreasonable, inasmuch as the trial court held Defendant to a higher standard as a business owner; punished him more severely for "fast forwarding" the same video footage Defendant retained and also provided the foundation of the Commonwealth's prosecution; and, imposed a harsher sentence on the defendant than was imposed on his equally, if not more culpable, co-defendants.

There is no automatic right to appeal regarding such claims. See, 42 Pa. C.S.A.§ 9781; Commonwealth v. Colon, 102 A.3d 1033, 1042 (Pa. Super. 2014) (citing Commonwealth v. Hanson, 856 A.2d 1254, 1257 (Pa. Super. 2004)); see, Commonwealth v. Marts, 889 A.2d 608, 611 (Pa. Super. 2005). Before a court may consider a discretionary sentencing claim, a defendant must demonstrate that: (1) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (2) a timely notice of appeal was filed; (3) Defendant fully complied with Pennsylvania Rule

9

of Appellate Procedure 2119(f); and, (4) there was a "substantial question" that the sentence imposed was not appropriate under the Sentencing Code. 42 Pa. C.S.A. §9781(b); Colon, 102 A.3d at 1042-43.

In the instant matter, Defendant has, to date, satisfied the first two prerequisites. He preserved his claim by filing a timely post-sentence motion. Following this court's denial of said Motion, Defendant timely filed a Notice of Appeal.

This court can only assume that Defendant will likewise satisfy the requirements of Rule 2119(f) when he files his appellate brief to satisfy the third prerequisite.

As to the fourth prerequisite, the determination as to whether an issue constitutes a "substantial question" is to be "evaluated on a case-by-case basis." A substantial question must "advance a colorable argument" that the sentence imposed was either "inconsistent with a specific provision of the Sentencing Code; or ... contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Cunningham, 805 A.2d 566, 574 (Pa. Super. 2002). In Commonwealth v. Mobley, 581 A.2d 949 (Pa. Super. 1990), the Superior Court determined that a claim that the sentence failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive did not raise a substantial question where sentence was within statutory guidelines and within sentencing guidelines. In this matter, Defendant received a sentence that is contained in the aggravated range of the sentencing guidelines.

Assuming, arguendo, that Defendant's general claim is that the court failed to fully and adequately consider the relevant sentencing factors set forth in 42 Pa. C.S.A. §9721(b), the court will nevertheless review said claim herein. See, Commonwealth v. Buterbaugh, 91 A.3d 1247 (Pa. Super. 2014).

Our Supreme Court has stated that the rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position

to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it". Commonwealth v. Ward, 568 A.2d 1242, 1243 (Pa. 1990). See also, Commonwealth v. Jones, 613 A.2d 587, 591 (Pa. Super. 1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime."). Moreover, the Supreme Court has determined that sentencing courts enjoy an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007). The Superior Court has embraced this principle stating that "the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review". Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2013).

Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Commonwealth v. Cevers, 546 A.2d 12, 18-19 (Pa. 1988); Commonwealth v. Ventura, 975 A.2d 1128, 1135 (Pa. Super. 2009).

In sentencing Defendant in the instant matter, the court was guided by an extensive pre-sentence investigation. In fashioning sentence, the court gave thoughtful consideration to: the penalties authorized by the Legislature; the sentencing guidelines and all of the applicable ranges, including the standard aggravated and mitigated ranges; the facts and circumstances of the current offenses; the pre-sentence investigation and all attachments thereto, which include documents regarding current offenses; letters of reference and character support on behalf of Defendant; the comments made by the attorney for the Commonwealth; the statement of the victim's mother; the comments of the defendant's attorney;

11

the comments of Defendant; the comments of Defendant's witnesses; Defendant's background; Defendant's rehabilitative needs; the need for there to be a deterrence; and, the need for the protection of the entire community. (N.T., Sentencing, August 10, 2017 at pp. 20-21).

The court considered Defendant's age and educational background. The court noted Defendant's lack of a prior criminal background. The court further considered Defendant's upbringing, relationship history, mental health history, and employment history. Specifically, the court noted that Defendant is 45 years of age. He is a high school graduate, and there is no history of learning disabilities or disciplinary issues in school. Defendant was enrolled for two years at the Derry Institute located in Phoenix, Arizona studying electronic engineering, and spent two years at the Bucks County Community College with general educational courses. (N.T., Sentencing, August 10, 2017 at p. 21).

As noted in the pre-sentence investigation, Defendant's family background was somewhat troubled in that his parents were divorced. Defendant's mother remarried, although her spouse passed away in a very short time thereafter. Defendant has two adoptive siblings, noting the struggles his sister had with her mental health issues before her untimely passing. There is no history of any sort of abuse within the family. Defendant has a very limited criminal record, consisting of a simple assault from 1997, although he possessed a zero prior record for sentencing guidelines purposes. (N.T., Sentencing, August 10, 2017 at p. 21).

There is a very limited drug and alcohol history that involves a sampling of alcohol at age 16. There was some occasional use of alcohol noted, but there has never been anything which rises on its face to be problematic in nature or needing any treatment. There is no history of any mental health treatment or diagnoses. Defendant has positive employment history. Obviously, he was the owner and proprietor of Molly's Pub from 2005 until 2016. This court considered that Defendant made many efforts towards charitable causes over the years during his ownership of this establishment; however, the

12

court noted that the occurrences at Molly's Pub on December 25, 2015 were anything about charitable. (N.T., Sentencing, August 10, 2017 at pp. 21-22).

The court noted that this was a very difficult matter to consider the equities in imposing sentence. The court had to weigh the positives in Defendant's life in consideration of what happened during this violent incident. In doing so, the court noted that this matter was more than an isolated assault. This criminal incident was a series of connected vicious assaults over an extended timeframe. The assaults that the victim suffered that evening were severe; sustained; and, absolutely senseless. Striking to the court was the extended period when the victim was knocked unconscious and left to lie unconscious, left to his own fate with no concern by anyone. After being rendered unconscious for an extended, the victim regained his feet only to be beaten back again. The court noted that said actions were absolutely inhumane, and that there is no place for that type of conduct in a civilized society. (N.T., Sentencing, August 10, 2017 at pp. 22-24).

Defendant's actions and those of his co-defendants were all unique and the court noted that Defendant was to receive an individualized sentence based upon the applicable circumstances and facts to him. The court noted that, under the laws of the Commonwealth of Pennsylvania, as soon as an individual becomes an accomplice or co-conspirator, the person is also liable for the conduct of others. The court went on to note that Defendant was not going to be judged by the conduct of these others and any prior instances at the same location, which did not involve Defendant. There is nothing about the prior environment of Molly's Pub that the court considered in the sentencing of Defendant. (N.T., Sentencing, August 10, 2017 at pp. 22-24).

Defendant presently asserts that this court improperly punished Defendant for being the proprietor of the establishment where the alleged offenses occurred. Although this court, during the

sentencing hearing, noted that Defendant has failed in his responsibility as the owner of such an establishment, that fact was not used by the court in fashioning Defendant's sentence.

Additionally, Defendant presently asserts that his sentence was disproportionate from the sentences imposed upon his co-defendants and, further, asserts that this court improperly enhanced Defendant's sentence as the result of actions taken by the defendant at the time during which Defendant was displaying the video surveillance footage captured by his cameras to the investigating officers. Defendant claims that his failure to destroy the surveillance video footage demonstrates a willingness of Defendant to cooperate with the investigation into this violent incident. Unfortunately, said claims are directly refuted by the record. Based upon the testimony presented at trial, Defendant failed to willingly release said footage to law enforcement, although this court clears understands that he had no obligation to do so. Most troubling to the Court was Defendant's attempt to prevent law enforcement officers from viewing the entirety of the incident which had occurred. When displaying the surveillance footage to the investigating officers, Defendant was directly controlling the computer, which contained the video footage. Defendant intentionally and purposely attempted to mislead the officers by "fast-forwarding" the video past the relevant footage, which had captured much of the alleged assaults, including Defendant's participation therein. Specifically, Detective Sergeant John Duby testified that he was assisting Detective Gerace in extracting a video that was recorded outside of Molly's Pub from Defendant's residence and Molly's Pub. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 114). Detective Duby observed Defendant assess the recordings on his DVR and start to review the video footage. (*Id.* at p. 115). Detective Duby testified that Defendant was using a computer mouse to select portions of the video to review and there was a point in time where the investigators caught Defendant skipping over portions of the video. (*Id.* at pp. 115-117). At that time, Defendant was asked to step away from the computer and the entire video was extracted onto a thumb drive. (*Id.* at p. 116). Sergeant

14

Gerace also testified that, after first denying that he had any video of the night of the incidents, Defendant showed the investigators the DVR recording. (*Id.* at pp. 149-151). Defendant was asked to step away from his computer as the investigators were reviewing the video at Defendant's residence, inasmuch as it appeared Defendant was attempting to "fast forward" or "reverse quickly" the footage. (*Id.* at p. 150). Although this court agreed that insufficient evidence existed to sustain Defendant's conviction of the offense of Tampering With or Fabricating Physical Evidence, this court firmly believes that this testimony was demonstrative of the genuine lack of remorse and lack of cooperation exhibited by Defendant in this matter. The court's sentence in this matter is a reflection upon the facts and circumstances of Defendant's life; the facts and circumstances of this offense; the guidelines; upon Defendant's rehabilitative needs; and, upon the statutory criteria of the need for there to be deterrence and protection of the community. Most importantly, the court's sentence is a balancing of the equities as to Defendant as a person when weighed against what happened on the night of the incident. (N.T., Sentencing, August 10, 2017 at p. 24). In this matter, the trial court appropriately considered Defendant's lack of remorse and lack of cooperation with authorities, along with the offenses charged and the Sentencing Guidelines to form a sentence consistent with protecting the public, the gravity of the offense, and Appellant's rehabilitative needs. See, Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988). Accordingly, this court appropriately weighed Defendant's lack of remorse or lack of cooperation in fashioning the sentence imposed. See, Commonwealth v. Begley, 780 A.2d 605 (2001); Commonwealth v. Ellis, 700 A.2d 948 (Pa. Super. 1997).

As reflected in the aforementioned commentary and considerations noted by the court, this court found sentencing in this matter to be a difficult task. When reviewing of the facts and circumstances of the instant offenses, this court affirmatively considered the relative actions of each co-conspirator, and, as applied to this Defendant, his lack of remorse as addressed above. The court believes that a sentence

15

in the aggravated range is appropriate and that any lesser sentence would depreciate the seriousness of this conduct. The sentence imposed in this case was not manifestly unreasonable, nor was it the result of partiality, prejudice, bias, or ill-will. It was the result of extensive reflection upon all considerations discussed above.

## CONCLUSION

Accordingly, for the reasons set forth above, I conclude the grounds identified by Defendant in his Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) lack merit and respectfully request that the instant appeal be DENIED.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE
March 28, 2018

ATTEST:

Copies to:   Ryan D. Tilley, Esquire, Office of the District Attorney of Lancaster County
Alan G. Goldberg, Esquire, Counsel for Defendant

LANCASTER COUNTY, PA   2018 MAR 29 PM 2: 19   CLERK OF COURTS